Filed OCT -3 1985

No. 85-31

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

WAYNE S. HALL,

Petitioner and Appellant,

-vs-

STATE COMPENSATION INSURANCE
FUND, DIVISION OF WORKERS'
COMPENSATION,

Respondent and Respondent.

APPEAL FROM:   Workers' Compensation Court, The Honorable
               Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hash, Jellison, O'Brien & Bartlett; Kenneth E. O'Brien
        argued, Kalispell, Montana

    For Respondent:

        Garlington, Lohn & Robinson; Bradley J. Luck argued,
        Missoula, Montana

                              Submitted:  July 2, 1985

                              Decided:  October 3, 1985

Filed OCT -3 1985

_Ethel M. Harrison_
_____
              Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Wayne S. Hall, appellant, requested the State Compensation Insurance Fund to waive any subrogation interest it might have in a third-party claim filed by Hall and to redetermine Hall's permanent partial impairment rating. The State Fund refused both requests. Hall petitioned the Division of Workers' Compensation to review the State Fund's decision. On March 23, 1984, the Division determined that the State Fund's decision was correct. On December 24, 1984, the Workers' Compensation Court also affirmed the State Fund. Hall now appeals to this Court. We reverse.

This cause was submitted to the Workers' Compensation Court and to this Court on the following agreed statement of facts:

"1. Wayne S. Hall was injured within the scope and course of his employment for Karl Weissman and Sons on August 6, 1982. At the time of the Petitioner's injury, Karl Weissman and Sons was enrolled under Plan 3 of the Workers' Compensation Act, and the State Compensation Insurance Fund was its compensation carrier.

"2. Respondent accepted liability for the Claimant's injury and paid medical benefits of $2,260.01 and acknowledged liability for an indemnity permanent partial disability award of $11,835.00. The 'Guide to Evaluation of Permanent Impairment' published by the American Medical Association was utilized by the Compensation Insurance Fund in computing the indemnity for permanent partial disability. Utilizing this guide, the following evaluation was made: (a) 15% upper arm impairment = 9% of the whole man; (b) 25% of lower leg impairment = 10% of the whole man; then utilizing the AMA Guide, the combination of those two impairments would equal 18% of the whole man. This resulted in a computation of 90 weeks of compensation at $131.50 a week for a total of $11,835.00.

"3. The preface of the AMA Guide published in 1971 contains the following language: 'After values of all impairments involved have been computed and

2

transposed to a common denominator, the final impairment value, whether the result of a single or combined impairments, should be expressed in terms of the nearest 5%.' The Claimant requested that these guidelines be followed and that his permanent partial impairment be set at 20% rather than 18%, and the State Fund declined to make the adjustment.

"4. The Claimant pursued a third party claim as the result of the injury, and the State Fund declined to participate. The Claimant settled the third party claim for the sum of $25,000.00. This represented the insurance policy limits of the third party tort-feasor. The Claimant's expenses, costs and attorneys' fees for the third party action amounted to the sum of $6,259.00. The Respondent claimed a subrogation interest of $7,048.00 and subtracted that amount from the indemnity award at the time of payment. The Claimant contended that the Respondent was not entitled to subrogation. The Claimant contended that his third party claim was valued in excess of $40,000.00 but that the $25,000.00 settlement at policy limits was all that was available. On March 23, 1984, the Division of Workers' Compensation conducted an administrative review of the matter and determined that the claimed subrogation interest of the Respondent was appropriate."

Prior to oral argument, the parties settled the impairment rating issue. The remaining issue to be determined is:

If the value of the claimant's total damage for the personal injuries he sustained exceeded $40,000, and the $25,000 insurance coverage constituted the only source of funds to liquidate such damage, was the respondent entitled to a subrogation interest in the $25,000 settlement proceeds of the third-party claim?

In answering this question affirmatively, the Workers' Compensation judge relied on this Court's decision in Brandner v. Travelers Insurance Company (1978), 179 Mont. 208, 587 P.2d 933. This reliance is misplaced as Brandner is easily distinguishable from the case at bar. In Brandner, the claimant settled with the third party, Burlington-Northern, for $70,000, an amount not dictated by the upper

3

limits of any insurance policy. We found that claimant was made whole by a voluntary settlement in satisfaction of all claims. The defendant, Burlington Northern Railroad, had no limited liability. Since claimant had obtained full legal redress, we held that claimant's employer's insurer was entitled to subrogation.

In the case at bar, however, claimant reached a settlement with the third-party tortfeasor which did not afford full legal redress. The settlement was for the upper limit of the tortfeasor's insurance policy, $25,000. If claimant's damages exceed $40,000, claimant's settlement, together with the Workers' Compensation award, does not fully compensate claimant. Under these circumstances, we find our decision in Skauge v. Mountain States Telephone and Telegraph Company (1977), 172 Mont. 521, 565 P.2d 628, to be relevant.

In Skauge, claimants' rented home was destroyed by an explosion. Their personal belongings were insured for $4,000. The actual value of the property was over $11,000. Claimants recovered the upper limit of their insurance policy, then sued third-party tortfeasors, seeking the total amount of their loss. In addressing an issue regarding the subrogation rights of the insurer, we stated that:

> ". . . when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor." Skauge, 172 Mont. at 528, 565 P.2d at 632.

Applying this principle to the facts now before us, the State Fund is not entitled to any subrogation interest in the $25,000 settlement proceeds as claimant has not been made whole.

4

Furthermore, 1972 Mont. Const., art. II, § 16, provides in pertinent part:

> "No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state . . ."

This section was interpreted in White v. State (Mont. 1983), 661 P.2d 1272, 40 St.Rep. 507, as creating a fundamental right to full legal redress. Thus, to interpret the Workers' Compensation Act's subrogation statute, § 39-71-414, MCA, to allow the State Fund subrogation rights when the claimant has not achieved full legal redress would be an unconstitutional application of an otherwise constitutional statute. (See Brandner, 179 Mont. at 211-214, 587 P.2d at 936 - 937, for a discussion of the constitutionality of § 39-71-414, MCA.)

We hold that, in a case of reasonably clear liability, where a claimant is forced to settle for the limits of an insurance policy which, together with claimant's workers' compensation award, do not grant full legal redress to claimant, the insurer is not entitled to subrogation rights under § 39-71-414, MCA. When claimant is made whole, subrogation begins.

Reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

John A. Sheehy
_____
Justices

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion. The majority relies upon Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 565 P.2d 628, for its conclusion that the State Fund is not entitled to any subrogation interest in the $25,000 settlement proceeds until the claimant has been made whole for his entire loss including attorneys fees. While it is true that such a theory was found to apply in Skauge, a case involving an insured and his own insurance company, the rationale does not apply to the present case. As we stated in Skauge:

> The basic rationale for this rule, in either of the two categories, is best stated in St. Paul Fire & Marine Ins. Co. v. W. P. Rose Supply Co., supra, 198 S.E.2d at 484:
>
> "* * * When the sum recovered by the Insured from the Tort-feasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." (Emphasis supplied.)
>
> Again we note, the doctrine of legal subrogation is applied to subserve the ends of justice and to do equity in the particular case under consideration.

Skauge, 172 Mont. at 528, 565 P.2d at 632. Skauge held that the loss should be borne by the insurance company because that is a risk which the insured has paid the company to assume. That is not the factual situation in the present case where it is the employer who has paid the premium for workers' compensation coverage. In addition, the doctrine of legal subrogation is shown in Skauge to have arisen in equity and is applied in order to do equity between the insured and his own insurance company. Again, that legal theory is not applicable in the present case where the insured worker has paid nothing to the insurance company.

7

In this case, the right of subrogation is not based upon an insurance contract between the parties or upon a legal theory of subrogation involving an insurance company and its insured, as was the case in Skauge. Instead, it is based upon § 39-71-414(1), MCA, which in pertinent part states:

> If an action is prosecuted as provided . . . the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act. The insurer's right of subrogation is a first lien on the claim, judgment, or recovery.

This Court has previously pointed out that the purpose of the subrogation provision is to compensate an employer and his insurer to some extent for the additional liability which they assume under the Workers' Compensation Act for wrongful acts of independent third parties. See Tuttle v. Morrison-Knudsen Co., Inc. (1978), 177 Mont. 166, 580 P.2d 1379; Fisher v. Missoula White Pine Sash Co. (1974), 164 Mont. 41, 518 P.2d 795. I therefore conclude that Skauge is not authority for limiting the subrogation right granted to the State Fund.

I also disagree with the majority conclusion that Brandner v. Travelers Ins. Co. (1978), 179 Mont. 208, 587 P.2d 933, is easily distinguishable from the case at bar. As I read that opinion, I conclude that the Workers' Compensation Court was correct in holding that Brandner required the decision which it reached. The majority opinion concludes that in Brandner we found that claimant was made whole by a voluntary settlement in satisfaction of all claims, and that since claimant had obtained full legal redress, it was appropriate to allow subrogation. With regard to whether or not claimant in Brandner was made whole, this Court stated:

> . . . In this case, it cannot now be determined whether the claimant has sustained a loss in excess of the

8

recovery made against Burlington North-
ern, Inc. That will only be determined
in the future. In the meantime, to the
extent that it has made payments, or will
make payments in the future, Travelers'
subrogation rights are reduced to fifty
percent under the statute. Travelers'
recovery may never exceed fifty percent
of the amount for which it is liable
under the Workers' Compensation Act.

The truth of the matter, as far as Work-
ers' Compensation payments are concerned,
is that claimant has been made whole to
date and the continuing liability for
payments under the act as against Travel-
ers has assured that claimant will con-
tinue to be made whole. He will not lose
any benefits under Workers' Compensation
Act by virtue of the recovery, but in
essence will recover his benefits under
the Act, and fifty percent more. It
cannot logically be contended therefore,
that claimant has not been made whole for
his Workers' Compensation injury, when
he, by his own voluntary action, has
finally compromised his claim in full
against the third-party tortfeasor.

Brandner, 179 Mont. at 215-16, 587 P.2d at 938. In essence,

Brandner holds that by virtue of the workers' compensation

payments, claimant was made whole and would continue to be

made whole because he received his full benefits plus 50

percent of the amount recovered from the third-party.

The majority relies upon White v. State (Mont. 1983),

661 P.2d 1272, 40 St.Rep. 507, for the conclusion that it

would be an unconstitutional application of the statute to

allow the State Fund subrogation rights because of the

claimed fundamental right of full legal redress. Our opinion

in White did not hold that the right to full legal redress is

an independent, fundamental right entitled to strict scrutiny

in every instance, including workers' compensation cases.

The issue before the Court in White was sovereign immunity

from suit for non-economic damages of a tort claimant. The

challenged statute, § 2-9-104, MCA (1981), barred recovery of

non-economic damages from the State and limited recovery of

9

economic damages to $300,000 for each claimant and $1,000,000 for each occurrence.

While there is broad language in White which does indicate that all persons have a speedy remedy for every injury, I would limit the holding of that case to the issue before the Court. The holding by the majority of the Court was that § 2-9-104, MCA, violated the constitutional guarantee of a remedy for every injury. White, 661 P.2d at 1275, 40 St.Rep. at 510. That holding alone is not authority for a conclusion that all persons in all circumstances necessarily have a fundamental right to full legal redress. Article II, § 16 of the Montana Constitution illustrates why that broad conclusion is not appropriate. While it is true that the initial portion of § 16 states that no person shall be deprived of his full legal redress, it is immediately followed by an exception for employers who provide coverage under the Workers' Compensation Act. That exception is directly applicable to the present case. I disagree with the conclusion that allowing State Fund subrogation rights would be an unconstitutional application of the statute.

I would affirm the Order and Judgment of the Workers' Compensation Court.

_____
Justice

We concur in the foregoing dissent.

_____
Chief Justice

_____
Justice

10