No. 13371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

JOHN A. SKAUGE and LINDA SKAUGE,

Plaintiffs and Appellants,

-vs-

MOUNTAIN STATES TELEPHONE AND TELEGRAPH
COMPANY and MONTANA-DAKOTA UTILITIES
COMPANY,

Defendants and Respondents,

MONTANA-DAKOTA UTILITIES COMPANY,

Third-Party Plaintiff,

-vs-

JOHN A. SKAUGE and LINDA SKAUGE, and
UNIGARD INSURANCE GROUP,

Third-Party Defendants.

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellants:

        Cate, Lynaugh, Fitzgerald & Huss, Billings, Montana
        William Fitzgerald argued, Billings, Montana

    For Respondents:

        Hooks and Sherlock, Townsend, Montana
        Jeffrey Sherlock argued, Townsend, Montana
        Hughes, Bennett and Cain, Helena, Montana
        Crowley, Haughey, Hanson, Gallagher and Toole, Billings,
        Montana

Submitted:  March 18, 1977

Decided:

Filed:

_____
                         Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

On September 10, 1973 the rented home of John and Linda Skauge in Billings, Montana was destroyed by an explosion and fire which consumed all of their personal possessions. The Skauges had a fire insurance policy with Uniguard Insurance Group (Uniguard), which insured the Skauges' personal property to the extent of $4,000 plus $400 for incidental living expenses in case of loss. This policy contained the following provision:

> "Subrogation: This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefore is made by this Company."

After determining that the loss exceeded the policy limits, Joseph Tobin, acting as adjuster for Uniguard, delivered a draft for $4,328.98 to plaintiffs' attorney, together with a proof of loss form to be signed by Skauges. Plaintiffs' attorney sent the draft and the proof of loss to the Skauges. The Skauges then returned the proof of loss to their attorney with a request that he reserve subrogation rights in the Skauges. The proof of loss was subsequently returned to the Skauges with the language granting subrogation to Uniguard struck out, and inserted the words: "The right to sue tort-feasors is reserved to the insured." The Skauges subsequently signed the proof of loss and cashed the draft. The proof of loss was never delivered to Uniguard.

On February 14, 1974, the Skauges filed a complaint alleging that Mountain Bell Telephone and Telegraph Company (Mountain Bell) and Montana Dakota Utilities Company (MDU) negligently caused the explosion and fire which destroyed their personal possessions and sought $11,267.32 as the total amount of their loss. We note that this action was commenced by the Skauges through retained counsel, and at this stage Uniguard was in no way involved in this litigation. Mr. Tobin testified that

- 2 -

he learned of this litigation on June 6, 1974, and thereafter informed Uniguard. Then on September 27, 1974 MDU filed a third party complaint against Skauges and Uniguard, alleging Uniguard's right of subrogation, and requesting the district court to ascertain who was entitled to any damages for which MDU might eventually be held liable. Thereafter, Uniguard first appeared in this litigation on December 24, 1974 by filing a motion to dismiss in response to MDU's third party complaint. The subrogation issue was eventually severed from the Skauges' original tort action and tried separately. The original tort action was continued, pending the outcome of the subrogation issue.

The district court, sitting without a jury, made a finding of fact that Joseph Tobin and plaintiffs' attorney had not come to an actual meeting of the minds as to the right of subrogation. Consequently, the district court concluded that Uniguard was entitled to be subrogated to the extent of its payment to Skauges, that such right was not waived by Uniguard, nor was it subject to any limitation in amount. Neither party contests the district court's findings of fact, however the Skauges object to the above mentioned conclusion of law. The Skauges have raised three issues, and have pled them in the alternative:

1) Whether or not Uniguard is entitled to subrogation absent a written assignment by the Skauges?

2) If so, is Uniguard's subrogation limited to the portion of the Skauges' recovery from MDU and Mountain Bell which exceeds the sum of the Skauges' total loss and their costs of recovery, including attorney's fees? and

3) Did Uniguard waive any right of subrogation it may have had by remaining inactive in the Skauge's lawsuit?

Subrogation is a device of equity which is designed to

compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it. Bower v. Tebbs, 132 Mont. 146, 314 P.2d 731. A property insurer who has indemnified the insured is usually subrogated to any rights the insured may have against the third party who is responsible for the loss. The theory behind this principle is that absent repayment of the insurer the insured would be unjustly enriched by virtue of re-covery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss. 16 Couch on Insurance 2d, Subrogation §61.18; Standard Acc. Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288; Fidelity & Cas. Co. of N.Y. v. First Nat. Bank in Ft. Lee, 397 F.Supp. 587. Subrogation is classified as legal or conventional; legal subrogation arises by operation of law, upon the fact of payment made by the insurer; whereas conventional subrogation arises by the contract of the parties. 16 Couch on Insurance 2d, Subrogation §61.2; Kroeker v. State Farm Mutual Automobile Ins. Co., (Mo.App. 1971) 466 S.W.2d 105. Furthermore, the parties may by agreement waive or limit subrogation. Fire Ass'n of Philadelphia v. Schellenger, 84 N.J.E. 464, 94 A. 615; Home Insurance Co. v. Hartshorn, 128 Miss. 282, 91 So. 1; Merchants Fire Assur. Corporation of New York v. Hamil-ton Co., 76 R.I. 294, 69 A.2d 551; Hardware Mut. Ins. Co. v. Dunwoody, 194 F.2d 666.

The Skauges have cited these latter four cases and have contended that the insurance policy made Uniguard's right of subrogation conditional upon a written assignment from the Skauges. However, the cases cited by the Skauges are easily distinguished by a comparison of the policy provisions involved. In each of the four cases cited above the policy provision in question stated:

- 4 -

> "Subrogation. If this company shall claim that
> the fire was caused by the act or neglect of
> any person or corporation, this company shall,
> on payment of the loss be subrogated to the
> extent of such payment to all right of recovery
> by the insured for the loss resulting therefrom,
> and such right shall be assigned to this company
> by the insured on receiving such payment."
> (Emphasis supplied.)

On the other hand, the policy provision in the present case

states:

> "This Company may require from the insured an
> assignment of all right of recovery against any
> party for loss to the extent that payment therefore
> is made by this Company."  (Emphasis supplied.)

This provision contains no conditional language, nor does it

specifically refer to "subrogation" as does the policy language

in the other cases.  In addition to this there exists the legal

distinction between an "assignment" and "subrogation".  As stated

in 16 Couch on Insurance 2d, Subrogation, §61.92, supra:

> "Subrogation is the substitution of another person
> in the place of the creditor, so that the person
> substituted will succeed to the rights of the
> creditor in relation to the debt or claim, and is
> an act of the law growing out of the relation of
> the parties to the original contract of insurance,
> and the natural justice or equities arising from
> the fact that the insurer has paid the insured,
> rather than a right depending upon the contract.
> On the other hand, an assignment of a right or
> claim is the act of the parties to the assignment,
> dependent upon actual intention, and necessarily
> contemplating the continued existence of the debt
> or claim, the whole of which is assigned.

> "Subrogation presupposes an actual payment and
> satisfaction of a debt or claim to which the party
> paying is subrogated, although the remedy is kept
> alive in equity for the benefit of the payor, while
> the assignment necessarily contemplates continued
> existence of the debt or claim assigned."

A further distinction is found in Kroeker v. State Farm

Mutual Automobile Ins. Co., supra, p. 110:

> "When there is an assignment of an entire claim
> there is a complete divestment of all rights
> from the assignor and a vesting of those same
> rights in the assignee.  In the case of subrogation,
> however, only an equitable right passes to the
> subrogee and the legal title to the claim is
> never removed from the subrogor, but remains with
> him throughout."

Therefore, we conclude that an express assignment of the claim to Uniguard was unnecessary, since legal subrogation arose from the fact of payment, and this was not waived or made conditional by agreement of the parties.

As for the second issue, the Skauges contend that when the payment of policy limits is less than the actual loss, the insurer cannot assert a right of subrogation until the insured has fully recovered his loss, plus the costs of recovery, including attorney's fees. Uniguard argues that such a rule is applicable, if at all, when the insurer is seeking reimbursement from an insured, who has recovered his loss from the tortfeasor, and not when the insurer seeks to recover from the tortfeasor.

There is authority for the rule relied upon by the Skauges, with some jurisdictions upholding Uniguard's position that the rule only applies when the insured is solely responsible for the recovery from the tortfeasor, whereas other jurisdictions do not make this distinction. An example of the first form of the rule is found in United Services Automobile Association v. Hills, 172 Neb. 128, 109 N.W.2d 174, 2 ALR3d 1422, 1428:

> "' * * * Where the assured, as in case of
> partial insurance, sustains a loss, in excess
> of the reimbursement or compensation by the
> underwriter, he has an undoubted right to have
> it satisfied by action against the wrong-doer.
> But if, by such action, there comes into his
> hands, any sum for which, in equity and good
> conscience, he ought to account to the under-
> writer, reimbursement will, to that extent, be
> compelled in an action by the latter, based on
> his right in equity to subrogation. But the
> assured will not, in the forum of conscience,
> be required to account for more than the surplus,
> which may remain in his hands, after satisfying
> his own excess of loss in full, and his reasonable
> expenses incurred in its recovery; unless the
> underwriter shall, on notice and opportunity
> given, have contributed to, and made common
> cause with him, in the prosecution.'"

See also Krause v. State Farm Mutual Automobile Ins. Co., 184

Neb. 588, 169 N.W.2d 601; St. Paul Fire & Marine Ins. Co. v.
W. P. Rose Supply Co., 19 N.C.App. 302, 198 S.E.2d 482. How-
ever, other jurisdictions have not limited this rule to re-
covery by the insurer against the insured, as evidenced by
67 N.J.Super. 475,
Providence Washington Ins. Co. v. Hogges,/171 A.2d 120, 124:

> " * * * In the absence of express terms in the
> contract to the contrary, he (insured) must be
> made or kept whole before the insurer may recover
> anything from him or from a third party under its
> right of subrogation." (Emphasis supplied.)

Utah also agrees with this view. Lyon v. Hartford Accident and
Indemnity Company, 25 Utah2d 31, 480 P.2d 739; Transamerica
Insurance Company v. Barnes, 29 Utah2d 101, 505 P.2d 783.

The basic rationale for this rule, in either of the two
categories, is best stated in St. Paul Fire & Marine Ins. Co. v.
W. P. Rose Supply Co., supra at 484:

> " * * * When the sum recovered by the Insured from
> the Tort-feasor is less than the total loss and
> thus either the Insured or the Insurer must to some
> extent go unpaid, the loss should be borne by the
> insurer for that is a risk the insured has paid it
> to assume." (Emphasis supplied.)

Again we note, the doctrine of legal subrogation is applied to
subserve the ends of justice and to do equity in the particular
case under consideration. Bower v. Tebbs, supra.

For these reasons we adopt the view that when the insured
has sustained a loss in excess of the reimbursement by the insurer,
the insured is entitled to be made whole for his entire loss and
any costs of recovery, including attorney's fees, before the
insurer can assert its right of legal subrogation against the
insured or the tortfeasor.

Examining the facts of this case, we find this rule should
be applied to the claim of the Skauges. Uniguard did not volun-
tarily seek to assist the Skauges in their suit, as alleged by
Uniguard. The district court file reveals that the Skauges filed
the complaint against MDU and Mountain Bell on February 14, 1974.

- 7 -

Mr. Tobin testified that he knew of this litigation as early as June 6, 1974, and thereafter informed Uniguard. However, Uniguard did not appear in the litigation until December 24, 1974, and this was done involuntarily in response to MDU's third party complaint. At this stage, discovery and investigation was substantially completed by the Skauges through retained counsel. Although Uniguard alleged at oral argument that Skauges were reluctant to allow them to join in the suit, Uniguard made no attempt to intervene pursuant to Rule 24, M.R.Civ.P. It appears that Uniguard would have contentedly remained on the sidelines until the conclusion of this litigation if not forced into the suit by MDU.

We note, also, that in applying this rule the Skauges will not be unjustly enriched by virtue of recovery from Uniguard and the tortfeasors, nor would the tortfeasors be relieved of their legal obligation for the loss, if found liable in the district court.

Since the third issue of waiver by Uniguard has been presented in the alternative, it was not fully litigated in the district court. We have held that the Skauges be made whole before Uniguard may assert its legal subrogation and we decline to address that issue.

This cause is reversed and remanded to the district court with instructions to enter judgment in accordance with this decision.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -