No. 93-624

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DeTIENNE ASSOCIATES LIMITED
PARTNERSHIP and PARK PLAZA HOTEL, INC.

      Plaintiffs and Respondents,

  -v-

FARMERS UNION MUTUAL INSURANCE
COMPANY,

      Defendant and Appellant.



FILED

AUG 1 6 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert F. James, James, Gray & McCafferty, Great
Falls, Montana

    For Respondent:

        Patrick E. Melby, Luxan & Murfitt, Helena, Montana

Submitted on Briefs:  June 2, 1994

Decided:  August 16, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This action springs from Farmers Union Mutual Insurance Company's (FUMI's) right of subrogation against a third party tortfeasor Montana Rail Link (MRL). MRL damaged FUMI's insured's property Park Plaza Hotel (Park Plaza) when a train wrecked in sub-zero weather and caused a prolonged power outage. When Park Plaza was not totally made whole by FUMI's policy payment, Park Plaza sued MRL for the excess damages. FUMI joined in that litigation. FUMI claims a right of subrogation against MRL. The First Judicial District Court found that, even though both insurer and insured were compensated by MRL, FUMI should pay Park Plaza for its attorney fees and costs incurred in this joint litigation with MRL. We affirm.

The only issue on appeal is:

Did the District Court err in ordering that Farmers Union Mutual Insurance Company must pay Park Plaza's attorney fees and costs, plus interest, before Farmers could assert its subrogation rights?

DeTienne Associates (DeTienne) is a Montana limited partnership which owns the Park Plaza in Helena. FUMI insured Park Plaza under a special multi-peril insurance policy. The hotel sustained property and business losses when an MRL train derailed, exploded, and caused power outages around Helena on February 2, 1989. During this four-hour power outage, Park Plaza sustained damage because the extremely cold weather conditions combined with the power outages caused pipes to freeze and burst.

2

FUMI paid Park Plaza $411,155.49, which represented the limits of Park Plaza's policy. Park Plaza contended that it sustained damages beyond this amount.

On November 19, 1990, FUMI brought suit against MRL in Cascade County. On February 2, 1991, Park Plaza brought suit against MRL in Lewis and Clark County. On May 31, 1991, FUMI intervened in Park Plaza's suit in order to assert its right of subrogation against MRL, and on October 22, 1991, the Cascade County suit against MRL was transferred to Lewis and Clark County. On November 7, 1991, the First Judicial District Court consolidated the two suits and dismissed FUMI's separate complaint for intervention. The parties stipulated that the issues of negligence would not be tried and that the trial would be limited to the issue of proximate cause and damages.

Park Plaza and FUMI could not agree on the amounts of damage sustained by Park Plaza, including the amounts of personal property damage and business interruption losses. An appraiser was hired and at trial Park Plaza sought $491,111 in business interruption losses for the period between February 2, 1989 and December 31, 1989.

On January 3, 1992, Park Plaza filed a cross-claim against FUMI, asserting that FUMI could not recover its damages until Park Plaza was made whole. Park Plaza's contention was that the policy payment paid by FUMI was short of the total damages it had sustained. On August 27, 1992, the court granted partial summary judgment against MRL and in favor of Park Plaza and FUMI for

3

damages caused to each by the power outage. Following a bench trial the court ordered MRL to pay $411,155 to FUMI for the money it had paid Park Plaza and $122,441 to Park Plaza for the damages sustained over and above the policy limits of the FUMI policy. The court ordered that the time period for which Park Plaza could recover was from the date of the train wreck until November of 1989, because Park Plaza went ahead with previously scheduled remodeling in November of 1989. The court left pending Park Plaza's cross-claim against FUMI for attorney fees.

In July of 1993, the court held a hearing specifically to determine whether Park Plaza should be reimbursed for its attorney fees and costs involved in the lawsuit with MRL. Also in July of 1993, an appeal was filed to this Court for review of the District Court's determination following the bench trial. We affirmed that decision. DeTienne Associates Limited Partnership and Park Plaza Hotel, Inc. v. Montana Rail Link (1994), 51 St.Rep. 125.

Following the subsequent court hearing involving attorney fees, the court ruled that Park Plaza was entitled to its fees and costs plus interest before FUMI could assert its right of subrogation against MRL. The result of this ruling would require FUMI to pay Park Plaza's attorney fees for the bench trial. FUMI appeals this ruling.

Did the District Court err in ordering that Farmers Union Mutual Insurance Company must pay Park Plaza's attorney fees and costs, plus interest, before Farmers could assert its subrogation rights?

4

The resolution of this case involves the District Court's interpretation of existing case law involving subrogation rights. We review a District Court's interpretation of law as to whether it is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The District Court determined that Park Plaza was entitled to be made whole including reimbursement of attorney fees and costs before FUMI could subrogate its interests against the insured or the tortfeasor (MRL). The court based this ruling on a prior case decided by this Court, Skauge v. Mountain States Tel. and Tel. Co. (1977), 172 Mont. 521, 565 P.2d 628. Further, the court determined that Park Plaza had paid premiums to FUMI so that it could be made whole should it be injured.

FUMI argues that it should not have to pay Park Plaza's attorney fees and costs, plus interest, because it is entitled to bring an action for subrogation in its own name. Further, FUMI argues that only when the insurer is seeking reimbursement from an insured who has recovered his total loss from the tortfeasor is the insurer prevented from subrogating until the insured is made whole.

Park Plaza argues that the rule in Skauge applies and FUMI cannot recover from MRL until Park Plaza has recovered the total sum of its losses. Also, Park Plaza contends that the specific subrogation provision in its policy states that it has the right to recover for its total losses before FUMI can subrogate its own interests. FUMI interprets this subrogation provision as meaning that it, the insurer, must be permitted to recover all the monies

5

it paid to Park Plaza.

The clause as included in Park Plaza's policy states:

**Subrogation.**
(a)    In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery against any third person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.    The insured shall do nothing after loss to prejudice such rights.    (Emphasis added.)

However, what we must determine on review is not only the interpretation of this provision, but also what significance it has to the entire purpose of subrogation.

We have already determined the purpose of "subrogation":

The purpose of subrogation is to prevent injustice by "compelling the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.    It is an appropriate means of preventing unjust enrichment."

Youngblood v. American States Insurance Co. (1993), 262 Mont. 391, 866 P.2d 203; citing Bower v. Tebbs (1957), 132 Mont. 146, 155, 314 P.2d 731, 736.

Subrogation is the substitution of another person in the place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debt or claim, and is an act of the law growing out of the relation of the parties to the original contract of insurance, and the natural justice or equities arising from the fact that the insurer has paid the insured, rather than a right depending upon the contract.

Youngblood, 262 Mont. at 394-96.

FUMI attaches great weight to the subrogation provision in Park Plaza's policy and would have us interpret it to require that FUMI must be totally reimbursed for all monies it paid to the insured.    FUMI contends that given this interpretation, the clause prohibits its payment of Park Plaza's attorney fees because if it

6

has to pay the insured's costs and attorney fees, the insurer would have to subtract this amount from its total recovery. Such an interpretation is negated by what we have determined to be the purpose of subrogation.

That purpose is not to ensure that the risk-taker, the insurer, be compensated for all money it paid to policy holders:

> [T]he insurer cannot assert any claim by way of subrogation unless the insured has a claim against the third person to which the insurer can be subrogated for the reason that the subrogated insurer stands in no better position than the insured, and cannot recover over against the wrongdoer unless the insured could have done so, for if the insured had no right of action against the wrongdoer none can pass to the insurer by way of subrogation. . . .Otherwise stated, subrogation by definition and of necessity presupposes the existence of a right of the insured against some third person or fund . . .

G.Couch and R.Anderson, 16 Couch Cyclopedia of Insurance Law, Subrogation, § 61:114, pgs. 183-184 (1983).

Relying on Skauge, the District Court determined that while FUMI was entitled to be subrogated, it had to reimburse Park Plaza for its attorney fees and costs involved in the litigation with the tortfeasor. Such reimbursement was required to make the insured whole. FUMI contends this reliance is error because of the different set of facts in Skauge--basically, the fact that the insurer in Skauge had to be drawn into the action against the tortfeasor where in the present case FUMI assisted Park Plaza at trial. While it is true that the facts of the two cases differ, and each case involving subrogation must be considered on its own facts, the equitable principles set down in Skauge are applicable here, despite the possible differences in facts.

7

The facts of the present case provide us with a subrogation clause that by its own terms, does not extend subrogation beyond the equitable principles set out in Skauge. The clause permits FUMI to subrogate—it does not dictate upon what terms that subrogation shall occur. The terms of subrogation are not provided by the parties' contract, here, but are provided by the equitable principles inherent in the Skauge ruling.

We determined in Skauge that in a situation where the sum recovered by the insured from the tortfeasor is less than the total loss and thus, either the insured or the insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume. Skauge, 172 Mont. at 528, 565 P.2d at 632. Likewise, we held in Skauge that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for its entire loss and any costs of recovery, including attorney fees, before the insurer can assert its right of legal subrogation against the insured or the tortfeasor. Skauge, 172 Mont. at 528, 565 P.2d at 632.

What this means if applied to the present case is that Park Plaza must recover all that it has lost because of the train wreck, including any attorney fees and costs expended in an attempt to recover sums over and above those received under its policy with FUMI. This must be done before FUMI can recover pursuant to subrogation rights.

We used the word "before" in Skauge to indicate that the

paramount interest is that of the insured. This language actually indicates that the insured's interests are the primary concern and are attached to the subrogation rights of the insurer; the use of the word "before" does not necessarily indicate a chronology of events.

It is possible that neither the insurer nor the insured will be able to make a decision as to which party should litigate against the tortfeasor. In many fact situations, the tortfeasor will eliminate the timing concerns raised in Skauge by joining both parties in simultaneous litigation:

> [T]he insured may prosecute an action for the full amount of the loss, or either the insured or the insurer may separately sue for his portion of the loss, and if the action is instituted by either one alone, the defendant can compel joinder of the other or may waive joinder.

Glacier General Assurance Co. v. G. Gordon Symons Co., Ltd. (9th Cir. 1980), 631 F.2d 131, 134 (citing State ex rel. Slovak v. District Court (1975), 166 Mont. 485, 489-90, 534 P.2d 850, 852.) This case law recognizes that in order to protect themselves from multiple lawsuits, defendants can require that both the insurer and insured join in the suit or otherwise be bound by its outcome. United States v. Aetna Casualty & Surety Co. (1949), 338 U.S. 366, 381, 70 S.Ct. 207, 94 L.Ed.2d 171.

Therefore, despite the use of the word "before" in the Skauge ruling, the important aspect of the case is the adoption of the equitable principle that an insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses. The insured has paid premiums to be insured. This

9

equitable principle is not impaired by concurrent litigation of both the insured's and the insurer's interests.

FUMI maintains that if this Court determines that Park Plaza obtains reimbursement for its costs and attorney fees, the ensuing precedent would remove any incentive for an insurance company to participate in an action to recover the damages of its insured above policy limits. We disagree. Such a conclusion by this Court could just as easily prompt insurance companies to simultaneously litigate both their own subrogation rights and the insured's losses over and above policy limits paid. By litigating the insured's damages concurrently with its own, the insurer has control over the costs of litigation by combining its own interests with those of the insured. While FUMI argues that it could not concurrently litigate both its concerns and Park Plaza's because of a conflict of interest, we note that it was FUMI who filed to intervene in Park Plaza's action for excess damages against MRL.

Thus, regardless of the simultaneous judgments to FUMI and Park Plaza here, we are cognizant of two guiding concerns based upon prevailing equitable principles: 1) Park Plaza must be made whole for its losses, including the attorney fees it incurred in the litigation against the tortfeasor, and 2) if either the insured or the insurer must to some extent go unpaid, equity prescribes that the loss should be borne by the insurer, in this case, FUMI. Therefore, while we have a situation in which both insurer and insured were compensated by the tortfeasor at the same time during the same litigation instead of the insured regaining its total

costs first as indicated by Skauge, we must still arrive at the same equitable conclusion that Park Plaza must be made whole in terms of all losses--including money it expended on the MRL litigation.

To do otherwise would mean that the insured looses money (money paid for litigation of excessive damage plus money paid as premiums to insurer) and the insurer gains by such a financial arrangement (insurer has received premiums plus has been fully recompensed for money it paid to the insured). In Skauge we determined that such a state of affairs is akin to unjust enrichment and is not equitable.

FUMI contends that the Skauge case can be distinguished because it involves "legal" subrogation and that the present set of circumstances involves "conventional" subrogation. We stated in Skauge:

> Again we note, the doctrine of legal subrogation is
> applied to subserve the ends of justice and to do equity
> in the particular case under consideration.

Skauge, 172 Mont. at 528, 565 P.2d at 632. "Subrogation is an equitable doctrine which is not dependent on any contractual relationship between the parties." Youngblood v. American States Insurance Co. (1993), 262 Mont. at 395, 866 P.2d at 205. Equity is the motivating factor in Skauge--that the insured, after paying premiums to be insured, be made whole--and, although a different set of facts exists in the present case, the same equitable principle applies to Park Plaza--equity here dictates that Park Plaza recoup its total losses, including attorney fees and costs

11

because it has paid insurance premiums to be insured and FUMI has completely recovered its payment to Park Plaza.

The District Court further determined that Park Plaza was entitled to interest as provided in § 25-9-205, MCA:

> **Amount of Interest.** (1) Except as provided in subsection (2), interest is payable on judgments recovered in the courts of this state at the rate of 10% per annum and no greater rate.

This statute governs the interest rate on any judgment already rendered, but not yet paid. It is self-explanatory and applicable to all judgments.

The court also determined that Park Plaza was entitled to pre-judgment interest after financial affidavits determined the exact amount of attorney fees and costs. FUMI argues that it is not responsible for pre-judgment interest.

Section 27-1-211, MCA, states:

> **Right to interest.** Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

Prejudgment interest can be awarded by the trial judge pursuant to § 27-1-211, MCA, when the following criteria are met: 1) there is an underlying monetary obligation; 2) the amount of recovery is certain or capable of being made certain by calculation; and 3) the right to recovery vests on a particular day. R.H. Grover, Inc. v. Flynn Ins. Co. (1989), 238 Mont. 278, 777 P.2d 228.

Park Plaza asserts that they are due monies spent on

12

litigation through June 29, 1993. They presented financial affidavits dated June 29, 1993, at a hearing held by the court on July 7, 1993. FUMI agreed to the totals in these affidavits. The court found that FUMI owed Park Plaza pre-judgment interest on the costs of recovery of $35,112.59 from June 29, 1993.

We conclude that the elements required for pre-judgment interest have been satisfied: FUMI has an underlying monetary obligation to Park Plaza for costs and attorney fees amounting to $35,112.59, that sum was made certain on June 29, 1993, when it was incorporated into financial affidavits, and the right to recover these fees vested on July 7, 1993, when FUMI agreed that the fees were reasonable. In determining when pre-judgment interest will commence, we have held that it will begin on the date that the exact amount due is ascertained. Marriage of Gerhart (1990), 245 OMont. 279, 800 P.2d 698. Here, the date that the money due was ascertained was June 29, 1993. Therefore, the court was correct in determining that it was from this date that the interest should run.

We hold that the District Court did not err in ordering that Farmers Union Mutual Insurance Company must pay Park Plaza's attorney fees and costs, plus interest, before Farmers could assert its subrogation rights.

Affirmed.

Justice

13

We Concur:

_____
Chief Justice

_____

_____
Justices

14

August 16, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Robert F. James, Esq.
James, Gray & McCafferty
P.O. Box 2885
Great Falls, MT 59403

Patrick E. Melby, Esq.
Luxan & Murfitt
P.O. Box 1144
Helena, MT 59624-1144

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy