JUSTICE BAKER
delivered the Opinion of the Court.
¶1 The United States District Court for the District of Montana, Helena Division, the Honorable Sam E. Haddon presiding, certified the following question to this Court:
¶2 Does Montana law prohibit an insurer from exercising its rights of subrogation to seek payment from the separate property damage coverage of the liable third-party’s automobile insurance for the discrete amounts paid by the insurer for property damage where:

(a) the insured has suffered both bodily injury and property damage in an accident;

(b) the insurer’s property damage payments were made under separate, optional collision coverage for physical damage to the insured’s vehicle;

(c) the amounts sought from the liable third-party’s automobile insurance are covered by separate property damage liability coverage that is not exhausted by the amounts sought by subrogation;

(d) the insured has been fully compensated by payment from his insurer for the property damage loss — including all costs *64 associated with the property damage loss — and made whole as to the property damage loss that he insured as a result of the accident; and

(e) the insured contends he has not been made whole from the separate personal injury liability coverage of the liable third-party’s automobile insurance and the underinsured motorist coverage of his own automobile insurance policy?

¶3 We accepted the certified question and now answer that Montana law does not prohibit an insurer from exercising its right of subrogation under the specific listed conditions.
PROCEDURAL AND FACTUAL BACKGROUND
¶4 We summarize the undisputed facts from the U.S. District Court’s certification order. On October 26, 2009, Robert Van Orden (Van Orden) was involved in a motor vehicle accident caused by another driver. Van Orden carried an automobile insurance policy (the USAA Policy) through United Services Automobile Association General Indemnity Company (USAA). The USAA Policy included separate, optional collision coverage (Part D). Part D applied to losses suffered by Van Orden’s vehicle as a result of a collision. It covered the actual cash value of the loss minus a $500 deductible. The USAA Policy defined “loss” as:
direct and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto or equipment and accessories that are not permanently installed in your covered auto. Loss includes a total loss, but does not include any damage other than the cost to repair or replace. Loss does not include any loss-of-use, or diminution in value that would remain after repair or replacement of the damaged or stolen property.
Other provisions of the USAA Policy included underinsured motorist (UIM) coverage with bodily injury limits of $25,000 per person and $50,000 per accident.
¶5 The at-fault driver maintained automobile insurance coverage at the time of the accident through Alpha Property & Casualty Insurance Company (the Alpha Policy) which was underwritten by Unitrin Specialty Insurance (Unitrin). The Alpha Policy included liability limits of $25,000 per person for bodily injuries and a separate limit of $25,000 for property damage per accident.
¶6 As a result of the accident, Van Orden sustained both bodily injury and property damage. His property damage included $12,261.75 in vehicle repair costs and $720 for the use of a rental car. The parties *65 agree that this $12,981.75 is the total amount of property damage incurred by Van Orden as a result of the accident. USAA paid the vehicle repair and car rental costs directly to the merchants who supplied those services for Van Orden. Because the at-fault driver carried an active insurance policy, USAA waived Van Orden’s $500 deductible; Van Orden incurred no out-of-pocket expenses for his properly damage.
¶7 For the bodily iiquries suffered because of the accident, Van Orden recovered $24,430.19 from Unitrin under the bodily injury liability limits of the Alpha Policy and $50,000 from USAA under the UIM coverage of the USAA Policy. Van Orden claims that his bodily injury damages and costs to recover those damages exceed both the payments he has received and the limits of the bodily injury liability coverage of the Alpha Policy and the UIM coverage of his Policy.
¶8 USAA sought subrogation for the property damage expenses from Unitrin on November 24, 2009. On December 8, 2009, Unitrin paid USAA $12,981.75 out of the property damage liability limits of the Alpha Policy.
¶9 On February 24, 2011, Van Orden filed an action in Montana’s Eighth Judicial District Court, Cascade County, on behalf of himself and a putative class of plaintiffs. He alleged that USAA violated Montana law by seeking subrogation for property damage loss from a tortfeasor’s automobile liability insurer before its insured had been made whole with respect to related personal injuries. USAA removed the action to the U.S. District Court for the District of Montana and filed a motion for summary judgment; following a hearing, the U.S. District Court certified its question to this Court.
STANDARD OF REVIEW
¶10 When answering a certified question from another qualifying court as permitted by M. R. App. P. 15(3), our review is “purely an interpretation of the law as applied to the agreed facts underlying the action.” BNSF Ry. Co. v. Feit, 2012 MT 147, ¶ 6, 365 Mont. 359, 281 P.3d 225 (quoting State Farm Fire & Cas. Co. v. Bush Hog, LLC, 2009 MT 349, ¶ 4, 353 Mont. 173, 219 P.3d 1249).
DISCUSSION
¶11 Subrogation is the “substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.” Black’s Law Dictionary 1563-64 (Bryan A. Garner ed., 9th ed., West 2009). *66 Subrogation acts as an equitable device “designed to compel the ultimate payment of a debt by the one who injustice, equity and good conscience should pay it.” Skauge v. Mt. States Tel. & Tel. Co., 172 Mont. 521, 524, 565 P.2d 628, 630 (1977). “ ‘It is an appropriate means of preventing unjust enrichment.’ ” DeTienne Assocs. Ltd. Partn. v. Farmers Union Mut. Ins. Co., 266 Mont. 184, 188, 879 P.2d 704, 707 (1994) (quoting Youngblood v. Am. States Ins. Co., 262 Mont. 391, 866 P.2d 203 (1993)). An insurer who has indemnified its insured usually is subrogated to the insured’s rights of recovery against a third party who is responsible for the loss. Skauge, 172 Mont. at 524, 565 P.2d at 630. The polity underlying this equitable right of subrogation is that “absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in the absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss.” Skauge, 172 Mont. at 524-25, 565 P.2d at 630.
¶12 An insurer’s right to subrogation is limited, however, by the recognition that an insured is entitled to be fully compensated for his or her damages. Known as the “made whole doctrine,” this principle was explained in Skauge, where we held that “when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney’s fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.” Skauge, 172 Mont. at 528, 565 P.2d at 632. The plaintiffs in Skauge suffered fire damage in excess of the $4,000 policy limit paid out under their fire insurance policy through Unigard Insurance Group. Skauge, 172 Mont. at 523, 565 P.2d at 629. Seeking the remainder of their damages, Plaintiffs commenced a negligence action against the parties they believed to be responsible for the fire. Skauge, 172 Mont. at 523, 565 P.2d at 529. Because the Skauges had not yet been fully compensated for their losses, this Court reversed the district court’s determination that Unigard was entitled to subrogation for the $4,000 paid under the insurance policy. Skauge, 172 Mont. at 528-29, 565 P.2d at 632.
¶13 The made whole doctrine is consistent with the equitable principles underlying subrogation because plaintiffs who are not yet compensated for their loss are not unjustly enriched by recovering from both parties, and third-party tortfeasors are not relieved of their legal obligation for the loss. “When the sum recovered by the Insured from the Tortfeasor is less than the total loss and thus either the *67 Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer[,] for that is a risk the insured has paid it to assume” Skauge, 172 Mont. at 528, 565 P.2d at 632 (quoting St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co., 198 S.E. 2d 482, 484 (N.C. App. 1973)) (emphasis in original).
¶14 This Court has affirmed application of the made whole doctrine in numerous subsequent decisions. We held that the equitable subrogation principles articulated in Skauge control an insurer’s subrogation rights over standard insurance policy language mandating repayment of all money paid out under the policy. DeTienne, 266 Mont. at 184, 879 P.2d at 704. We later answered “yes” to a certified question asking, “[i]s it the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to the contrary?” Swanson v. Hartford Ins. Co., 2002 MT 81, ¶ 14, 309 Mont. 269, 46 P.3d 584.
¶15 The dissent to Swanson urged the Court to adopt a more narrow interpretation of when an insured is made whole — limiting the definition to all compensation, including costs and attorney’s fees, for only that element of damage for which the insured purchased insurance. Swanson, ¶ 36 (Leaphart, J., concurring in part and dissentinginpart). The majority dismissed this interpretation, stating, “[sjeldom to never do we find such perfect symmetry in an award or settlement. Typically, as here, the ultimate settlement (or judgment amount) is for a gross amount, without allocation for each particular element of loss.” Swanson, ¶ 26.
¶16 Van Orden argues that this passage demonstrates that the Swanson court expressly declined to adopt the more narrow interpretation that USAA now asks us to embrace. Such a reading of Swanson ignores the fact that those circumstances were not before the Court at that time. The Court there acknowledged, “If a plaintiff recovered a discrete amount from her insurer for a particular element of loss, and then recovered the identical amount from a third party, plus her costs and attorney fees associated with that recoveiy, and the amounts of each were specifically and separately determined either by agreement or in a judgment, then, in theory, subrogation should proceed.” Swanson, ¶ 25. The Court declined to adopt this as a blanket rule, however, for fear that “we would be left to speculate as to whether the insured did recover the identical amount of the loss for which the insurer seeks subrogation.” Swanson, ¶ 26.
*68 ¶17 Under the conditions set forth in the certified question, there is no need for speculation as to whether Van Orden is fully covered for the loss USAA seeks to recover. It is undisputed that Van Orden sustained $12,981.75 in total property damage, USAA paid that full amount under a separate and optional property damage portion of his policy, and USAA received that amount from a separate property damage liability limit of the at-fault driver’s insurance policy. Now faced with the precise situation acknowledged in Swanson, we agree with our statement there that subrogation may proceed in these circumstances. The insured has been made whole for the element of damage for which he purchased insurance.
¶18 To hold otherwise would not give effect to § 33-23-203(2), MCA. The legislature revised this statute in 1997 to allow an insurer to include reasonable subrogation clauses in its contracts “to prevent duplicate payments for the same element of loss under the motor vehicle liability policy....” “When interpreting a statute, we first look to the plain meaning of its words.” Hendershott v. Westphal, 2011 MT 73, ¶ 20, 360 Mont. 66, 253 P.3d 806. When the language of a statute is clear, it “speaks for itself and we will not resort to other means of interpretation.” Wolf v. Wolf, 2011 MT 192, ¶ 11, 361 Mont. 324, 258 P.3d 995. Van Orden argues that duplicate payments do not arise under § 33-23-203(2), MCA, until an insured has been made whole for all damages — even those not covered under the policy at issue. He contends that the Court in Swanson specifically rejected the idea that the viability of the made whole doctrine was affected by the legislative adoption of § 33-23-203(2), MCA. USAA counters that Van Orden’s interpretation ignores the plain language of the statute.
¶19 The statute expressly states that an insurer may prevent duplicate payments for the same element of loss. In Swanson, the insurer argued that § 33-22-203(2), MCA, as amended, limits the application of the made whole doctrine. Swanson, ¶ 22. We disagreed that the statute substantively altered the made whole doctrine, noting that “the common law and the statute jointly establish two rules of subrogation.” First, “an insured should not receive duplicate payments for the same element of loss,” and second, “the insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs.” Swanson, ¶ 23.
¶20 The record was unclear in Swanson as to whether the plaintiffs were fully compensated for any particular element of loss. Swanson, ¶ 41 (Leaphart, J., concurring in part and dissenting in part). Our recent cases, however, make clear that an insured’s receipt *69 of duplicate payments for the same element of loss may constitute a windfall to the insured if the coverage is limited to a discrete item, such as payment of medical expenses. See Conway v. Benefis Health Sys., 2013 MT 73, ¶ 35, 369 Mont. 309, 297 P.3d 1200 (citing Newbury v. State Farm. Fire & Cas. Ins. Co., 2008 MT 156, ¶ 38, 343 Mont. 279, 184 P.3d 1021). In Conway, we held that “medical payments coverage is for the payment of medical expenses only; it does not provide for the payment of additional or excess sums to the insured.” Conway, ¶ 35. We rejected the insured’s argument that he was entitled to pocket the difference between the medical payment coverage and his health insurance’s contractual reimbursement rate. Conway, ¶ 35. In Newbury, the Plaintiff argued that a provision in his automobile insurance policy — disallowing coverage when medical expenses are payable by workers’ compensation benefits — violated Montana public policy. Newbury, ¶ 43. While we agreed with Newbury that he paid valuable consideration to have his medical expenses paid, we held that because his medical expenses were paid through workers’ compensation benefits, receiving in “excess of the total amount of his medical expenses would result in a windfall to Newbury.” Newbury, ¶ 47.
¶21 Van Orden argues that because he has not yet recovered all of his personal injury damages, the amount USAA recovered under the tortfeasor’s property liability limit must go toward making him whole for those damages. Other than pointing to the broad rule articulated in Swanson, however, Van Orden fails to present authority for the proposition that a sum received from a separate property liability portion of a tortfeasor’s insurance policy may be received as compensation for his personal injury damages. Similar to Newbury and Conway, he paid consideration to cover a potential loss and he received the benefit of that premium when USAA paid for all the costs associated with his property damage. He has not demonstrated how he could recover additional amounts directly from the property damage portion of the tortfeasor’s policy. See Conway, ¶ 37. Even assuming that Van Orden’s damages exceeded the combined payouts from USAA and Unitrin, under no circumstances would the remaining money available under the property damage coverage of the Alpha Policy spill over into the bodily injury pool of money, or be subject to attachment for the payment of attorney’s fees or costs. Because this additional property damage money would not be available to Van Orden whatever the situation, USAA is clearly not asserting an interest in sums that Van Orden otherwise would be able to recover from the *70 tortfeasor's policy. USAA is not taking any money out of Van Orden's pocket.
¶22 The Dissent’s criticism of this conclusion is premised on its theory that “all available insurance coverage proceeds, from whatever source, go into one pot.” Dissent, ¶ 42. Seemingly, this would mean that the Alpha Policy’s property damage coverage, from which USAAis seeking recovery, should be available along with any other insurance proceeds to make Van Orden whole. Yet, the Dissent asserts that it is not advocating for this outcome. Dissent, ¶ 42. We therefore cannot understand what would be the effect of the Dissent’s “one pot” proposal, nor has the Dissent explained how — by denying USAA its limited subrogation right — the pot of money available to make Van Orden whole would somehow expand. It bears repeating that we have refused to permit subrogation in those cases where the sums the insurer is attempting to collect would deplete the sum of money otherwise available to the injured party from the liable third party.[1] The Dissent cites Allstate Ins. Co. v. Reitler, 192 Mont. 351, 628 P.2d 667 (1981) and Youngblood for the proposition that we have refused to enforce contract provisions allowing subrogation before an insured is made whole. Dissent, ¶ 32. These cases pre-date the operative language in § 33-23-203(2), MCA, and involved an insurer attempting subrogation against any liability coverage the insured might have had against the third party. Allstate, 192 Mont. at 353, 628 P.2d at 668; Youngblood, 262 Mont. at 399, 866 P.2d at 207. As indicated, that is not the case here.
¶23 Newbury and Conway support our determination that access to additional payments for property damage under the Alpha Policy would result in a double recoveiy for the same element of loss. See also *71 Forsman v. United Fin. Cas. Co., 2013 U.S. Dist. LEXIS 118893 (D. Mont. Aug. 21, 2013) (No. CV 12-157-M-DWM) (Plaintiffs who had recovered their collision damages from third-party tortfeasor’s coverage failed to make a plausible claim that they were denied any “recoverable” damages under their own collision coverage in policy that denied duplicate recovery for same element of loss). That Van Orden is not yet made whole as to his personal injury damages does not control our analysis because Part D of the USAA Policy provided coverage for property loss only. “What [Van Orden] paid valuable consideration for in this case was to have his [property damage] expenses paid and it is undisputed that his [property damage] expenses were paid.” Newbury, ¶ 47.
¶24 The Dissent acknowledges that “the subrogated insurer stands in no better position than the insured ... .” Dissent, ¶ 40 (quoting DeTienne, 266 Mont. at 189, 879 P.2d at 707). The point the Dissent concedes is that, standing in his own position, Van Orden could not recover directly from the third-party tortfeasor’s property damage policy coverage any more than he already recovered from USAA. USAA recovered only the amount of property damage suffered by Van Orden, which it had wholly covered for him under Part D of the policy.
¶25 When a settlement or judgment does not allocate payment for separate elements of loss under discrete portions of a policy for which a premium separately has been paid, subrogation may not proceed until the insured is made whole for all of his or her damages. But when, as here, damages are discrete, readily-ascertainable, and completely covered under a separate policy or portion of the poluy for which a separate premium has been paid, subrogation may proceed as to that element of loss only. According proper deference both to the plain language of the applicable statute and to this Court’s prior rulings, this holding balances an insurer’s statutory right to prevent double recovery and an insured’s right to be made whole for all of his or her damages.
¶26 Based on the foregoing, we answer the certified question “no”: Montana law does not prevent an insurer from exercising its right to subrogation under the limited, specific circumstances presented in the certified question.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, RICE, McKINNON and DISTRICT JUDGE SALVAGNI, sitting for former JUSTICE MORRIS, concur.

 Compare Swanson, ¶ 5 (Hartford sought to invoke a subrogation clause granting it the right to recover any payments to the insured under the insured’s personal injury protection coverage if the insured recovers damages from a third party); DeTienne, 266 Mont. at 186-92, 879 P.2d at 706-09 (insurer sought subrogation rights for stuns paid under a “special multi-peril insurance policy” based on language in policy that insurer “shall be subrogated to all the insured’s rights of recoveiy against any third person”); Skauge, 172 Mont. at 523, 565 P.2d at 629 (policy language provided for assignment of “all right of recovery against any party for loss to the extent that payment therefore [sic] is made by this Company”); with Newbury, ¶¶ 38-39, 47 (insured not entitled to seek payment under medical payments portion of his policy when his employer’s workers’ compensation carrier already had paid his medical expenses); and Conway, ¶ 35 (relying on Newbury, holding that insured could not recover under medical payments coverage when his medical expenses already had been paid).