JUSTICE WHEAT
dissents.
¶27 I would answer yes to the certified question. For over thirty-five *72 years, this Court has uniformly upheld the strong public policy protecting injured persons when insurance companies seek subrogation. What the majority does, here, is create an exception that erodes the strength of this precedent.
¶28 Montana case law prohibits subrogation in this case because Van Orden asserts he has not been made whole. See Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d vol. 16, § 223:149, 223-168 (West 2005) (“When the make whole rule is applied to a circumstance in which the insurer and insured are not in agreement as to whether the insured has, in fact, been made whole so as to allow the insurer to make some recovery of its payment, there must be a legal determination of that fact.”); see also Skauge v. Mt. States Tel. & Tel. Co., 172 Mont. 521, 528, 565 P.2d 628, 632 (1977) (“[T]he insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney’s fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.”) (emphasis added); Youngblood v. Am. States Ins. Co., 262 Mont. 391, 396, 866 P.2d 203, 206 (1993) (“With some exceptions, subrogation against an insured is allowed if that insured has been made whole and has been fully compensated, which compensation includes costs and attorney’s fees.”) (emphasis added); DeTienne Assocs. Ltd. Partn. v. Farmers Union Mut. Ins. Co., 266 Mont. 184, 191, 879 P.2d 704, 708-09 (1994) (“[A]n insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses. The insured has paid premiums to be insured.”) (emphasis added); Swanson v. Hartford Ins. Co., 2002 MT 81, ¶ 28, 309 Mont. 269, 46 P.3d 584 (“[I]t is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary”) (emphasis added). Following in the footsteps of the U.S. District Court for the District of Montana in Forsman v. United Fin. Cas. Co., CV 12-157, 966 F. Supp. 2d 1091 (Mont. Aug. 21, 2013), the majority now dissects the insurance coverages in such a way that our long-standing made whole doctrine is undermined. The majority’s reasoning paints the injured party as recovering a windfall, even though the injured parly paid for the coverage the insurance company seeks to subrogate, before a total made whole determination has occurred. “Any change in the law that results in the insurer avoiding transfer of part or all of the risk for which it accepted premiums is destructive to the very foundation and purpose of insurance.” Greg Munro, Medical Pay *73 Coverage, Bodily Injury Coverage, and the Group Health Plans: Who is Going to Pay Tort Medical Expenses and When?, Trial Trends 16, 17 (Winter 2014). The majority’s departure from all of our precedent regarding subrogation undermines the made-whole doctrine to the detriment of insured Montanans.
¶29 We have long recognized in the field of liability insurance that it is good public policy to protect and defend the injured person’s right to be made whole before an insurance company is allowed to subrogate, especially when the injured person has paid for the coverage at issue. Skauge, 172 Mont. at 528, 565 P.2d at 632; DeTienne, 266 Mont. at 190, 879 P.2d at 708; Swanson, ¶ 28. It is also a longstanding principle that if someone must suffer a loss, it should be the insurance company, not the injured person. Skauge, 172 Mont. at 528, 565 P.2d at 632; DeTienne, 266 Mont. at 190, 879 P.2d at 708; Swanson, ¶ 27. “The only practical way we can satisfy this principle is to allow full compensation to the plaintiff first, before subrogation is allowed.” Swanson, ¶ 27. Unfortunately, in this case the majority has opened the door for insurance companies to start chipping away at the made whole doctrine under the guise of allowing subrogation between “discrete” coverages, even if the injured person has not been made whole.
¶30 The majority’s approach effectuates a change in the law by allowing insurance companies to divide what it means to be “made whole” into discrete elements of loss. There are essentially two approaches to what it means to be made whole. Jeffrey A. Greenblatt, Insurance and Subrogation: When the Pie Isn’t Big Enough, Who Eats Last?, 64 U. Chi. L. Rev. 1337, 1343-44 (Fall 1997). The first approach, which this Court has traditionally followed, is to allow subrogation only when the insured has been compensated "for all the elements of damage, not merely those damages for which the insurer has indemnified him.” Greenblatt, 64 U. Chi. L. Rev. at 1344 (emphasis added); see Russ & Segalla, Couch on Insurance 3d at § 223:133, 223-146 to 223-149. The second will allow separate elements of a damage award to be identified and credited to the subrogated claims, even if the insured has not been made whole with regard to his other claims. Greenblatt, 64 U. Chi. L. Rev. at 1344. The second approach generally relies on principles of contract law to allow insurers to contract around the traditional made whole doctrine. See eg. Gibson v. Country Mut. Ins. Co., 549 N.E.2d 23 (1990); Forsman; see also Russ & Segalla, Couch on Insurance 3d at § 223-147, 223-163 to 223-165. Courts adhering to the first approach have generally held that the equitable principles underlying subrogation override contract terms of this *74 nature. Russ & Segalla, Couch on Insurance 3d at § 223:148, 223-166 to 223-167. Adopting the second view, now, is a shift in the law.
¶31 This Court’s precedent has generally emphasized the equitable principles underlying subrogation in the context of the made whole doctrine. We have explained that subrogation, at its origin, is a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it. Skauge, 172 Mont. at 524, 565 P.2d at 630. Accordingly, we held that:
[W]hen the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney’s fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.
Skauge, 172 Mont. at 528, 565 P.2d at 632. We elaborated in Youngblood that “[sjubrogation is an equitable doctrine which is not dependent on any contractual relationship between the parties and is not dependent on privity.” Youngblood, 262 Mont. at 395, 866 P.2d at 205. In DeTienne we clarified the purpose of the Skauge ruling “is the adoption of the equitable principle that an insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses.” DeTienne, 266 Mont. at 191, 879 P.2d at 708. We explained that the purpose of subrogation “is not to ensure that the risk-taker, the insurer, be compensated for all money it paid to policy holders[.]” DeTienne, 266 Mont. at 189, 879 P.2d at 707 (emphasis added).
¶32 Relying on these equitable principles, we have declined to enforce contract provisions that would allow subrogation before an insured has been made whole. In Swanson, we held:
[I]t is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary.
Swanson, ¶ 28 (emphasis added). We have allowed subrogation only after the insured has been fully made whole and declined to enforce contract provisions that would beg a different result. For instance, in Youngblood we overturned the contract-based reasoning we had used in Allstate Ins. Co. v. Reitler, 192 Mont. 351, 628 P.2d 667 (1981), explaining that we had reached the correct result “not because there was a prohibited assignment of a personal injury claim, but because of the public policy reasons expressed therein ... and because Allstate’s *75 right to reimbursement via subrogation was dependent upon the ability of the indemnified party to sue the tortfeasor.” Youngblood, 262 Mont. at 397, 866 P.2d at 206. In DeTienne we cited Youngblood in refusingto strictly interpret a subrogation clause, instead emphasizing the equitable “purpose of subrogation.” DeTienne, 266 Mont. at 189, 879 P.2d at 707. Transitioning to an approach that allows parties to contract around the made whole doctrine by splitting what it means to be “made whole” into discrete elements of loss, we open Pandora’s box of potential contract-based arguments for eroding the equitable foundations of subrogation.
¶33 USAA does not cite a single case in which we have held that a made whole determination may be segmented into discrete elements of loss. Instead, USAA relies on Justice Leaphart’s concurrence and dissent in Swanson and on a case from Louisiana. To support its contention that we should now allow such segmentation, USAA quotes language from Swanson, where we explained that “an insured should not receive duplicate payments for the same element of loss ... .” Swanson, ¶ 23. Conveniently, USAA omits the rest of the sentence following the quoted language: “[A]nd the insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs.” These two principles, we explained in Swanson, are two rules of subrogation jointly established by the common law and statute. Swanson, ¶ 23. In the sentence directly prior to paragraph 23 in Swanson, we explained that “duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery.”
¶34 The majority appears to accept USAA’s argument and now incorrectly reads Swanson to permit segmenting a made whole determination, when that result is at odds with Swanson’s holding. In Swanson, we affirmed application of the made-whole doctrine based on the argument that it is difficult to tell whether an insured has been fully reimbursed for a particular element of loss. See Swanson, ¶ 26. This, it should be noted, is one of two common rhetorical devices courts used to reject insurers’ requests for subrogation in the bodily injury context when precedent uniformly held that such subrogation was barred as a matter of public policy. See Brendan S. Maher & Radha A. Pathak, Understanding and Problematizing Contractual Tort Subrogation, 40 Loy. U. Chi. L. J. 49, 71 (2008). It stands to reason that the purpose of our language in Swanson was to cement the made whole doctrine, not to signal a situation in which the made whole doctrine might not apply. The majority, however, distinguishes the *76 instant case on the basis that Van Orden has been reimbursed for the cost of his property damage. In distinguishing Swanson on that basis, the majority will now allow USAA to subrogate before Van Orden has been made whole, ignoring Swanson’s unequivocal holding:
[I]t is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary.
Swanson, ¶ 28 (emphasis added).
¶35 The minority’s argument that its resolution of this issue in this manner is necessary to give effect to § 33-23-203(2), MCA, allowing subrogation to prevent “duplicate payments for the same element of loss,” also ignores Swanson. In Swanson this Court addressed duplicate payments, explaining that since we presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes, the statute should be read to provide that “duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery.” Swanson, ¶ 22 (emphasis added). The majority, instead, distinguishes our reading of the statute in Swanson on the basis that “[tjhe record was unclear in Swanson as to whether the plaintiffs were fully compensated for any particular element of loss.” Opinion, ¶ 20 (citing Swanson, ¶ 41 (Leaphart, J., dissenting)). This reasoning adopts an approach that this Court specifically rejected in Swanson — engaging in a presumption that the insured was fully compensated, without full fact-finding. Swanson, ¶ 26. Swanson provided that it could not be determined whether the plaintiff had been fully compensated for any particular element of loss until the plaintiff had been made whole for all losses, as well as costs of recovery. That has not happened, here.
¶36 The facts of the instant case are also distinguishable from those in Conway said Newbury, on which the majority’s opinion relies. Both of those cases involved only competing insurance policies carried by the insured injured party. The foil extent of the injuries at issue was known at the time the cases were determined. Neither case involved a tortfeasor, or a tortfeasor’s insurance company. Thus, the public policy concerns involved in subrogation where tort claims are at issue-compelling the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it — did not arise. In contrast, the full extent of the injuries at issue here is not known at this time because full fact-finding has not yet occurred. This case *77 involves the injured party’s insurer and the tortfeasor’s insurer, as well as the tortfeasor himself. Pursuant to our decision in Swanson, it is inappropriate to allow subrogation until Van Orden has been made whole for all of his losses, including the cost of recovery.
¶37 The majority’s approach to this issue is barred by the doctrine of stare decisis. The majority makes much of the fact that Van Orden “has not demonstrated how he could recover additional amounts directly from the property damage portion of the tortfeasor’s policy.” Opinion, ¶ 21. If the result will be the same regardless of whether we require that Van Orden be made whole for the full extent of his losses before subrogation can occur, stare decisis suggests we should adhere to the approach set forth in our precedent. See Certain v. Tonn, 2009 MT 330, ¶ 19, 353 Mont. 21, 220 P.3d 384 (“Faced with viable alternatives, stare decisis provides the preferred course.”) (citations and quotation omitted). Indeed, stare decisis suggests we should follow our decisions unless they are “manifestly wrong.” Allstate v. Wagner-Ellsworth, 2008 MT 240, ¶ 39, 344 Mont. 445, 188 P.3d 1042. Allowing subrogation when Van Orden asserts he has not been made whole disturbs the stability and predictability of the law. See Allstate, ¶ 39. Instead of arriving at the result our precedent requires, the majority’s approach disregards decades of well-established law in Montana to undermine the made whole doctrine.
¶38 Even if our well-settled precedent did not preclude the majority’s approach, the balance of equities favors Van Orden because he asserts he has not been made whole for the full extent of his losses. As a matter of policy, subrogation in the tort context has, essentially, three main purposes: (1) to prevent unjust enrichment of the tortfeasor; (2) to deter future actors from engaging in similar torts; (3) to prevent unjust enrichment of the injured party with respect to the insurer. Maher & Pathak, 40 Loy. U. Chi. L.J. at 55. The first two are served simply by allowing an injured party to recover from the tortfeasor or the tortfeasor’s insurer. At issue here is the third. Common arguments for allowing an insurance company to subrogate amounts recovered from a tortfeasor are that the injured party is “double recovering” or is recovering a “windfall.” See Munro, Trial Trends at 16; Maher & Pathak, 40 Loy. U. Chi. L. J. at 57-59,
¶39 We have explained that no double recovery or windfall can occur unless and until the injured person has been fully made whole for the full extent of his losses. See Swanson, ¶ 22 (“duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery.”). In addition, both the “double recovery” and *78 “windfall” arguments — though initially attractive through their appeal to a sense of fundamental fairness — suffer from fatal flaws.
¶40 The “double recovery” argument is premised on an assumption that the injured party is only entitled to either proceeds from the insurance policy the party has paid for or to recover from a tortfeasor. In fact, as we explained in DeTienne:
The insurer cannot assert any claim by way of subrogation unless the insured has a claim against the third person to which the insurer can be subrogated for the reason that the subrogated insurer stands in no better position than the insured, and cannot recover over against the wrongdoer unless the insured could have done so, for if the insured had no right of action against the wrongdoer none can pass to the insurer by way of subrogation.... Otherwise stated, subrogation by definition and of necessity presupposes the existence of a right of the insured against some third person or fund ....
DeTienne, 266 Mont. at 189, 879 P.2d at 707 (quoting G.Couch & R.Anderson, 16 Couch Cyclopedia of Insurance Law, Subrogation, § 61:114, 183-84 (1983)) (emphasis added). In subrogation, the insured injured party surrenders damages to which he is entitled to reimburse his insurance company for benefits he has paid a premium to receive. In reality, it is the insurance company seeking subrogation that is, potentially, unjustly enriched, if the injured person has not been made whole for the losses caused by the tortfeasor. See DeTienne, 266 Mont. at 192, 879 P.2d at 709 (a situation in which the insured loses money — for instance, paid for litigation of excessive damage, plus premiums paid to the insurer — is akin to unjust enrichment and is not equitable). To ensure that the injured party is made whole, and to discourage the possibility that the company might be unjustly enriched vis-a-vis the injured party, we have always required that the injured party be ftdly made whole before any subrogation can occur. See Swanson, ¶ 28. Here, there is no danger of double-recovery at this time because Van Orden has not been made whole for all his losses, including costs of recovery.
¶41 The windfall argument also fails pursuant to the rule from Swanson. In addition, however, insurance companies often will have adjusted premiums to account for subrogation recoveries, or lack thereof. Where that has occurred there is no “windfall” to the insured, because the insured implicitly paid higher premiums for the right to keep tort proceeds. Maher & Pathak, 40 Loy. U. Chi. L. J. at 58. It is not clear what USAA’s practice is in this regard — which is precisely *79 why further fact-finding is needed to address Van Orden’s contention that he has not been made whole.
¶42 I would adhere to the approach to this issue set forth in our precedent. I am not asserting that Van Orden would be entitled to the Alpha Policy’s property damage coverage to pay for losses for which his USAA insurance policy had already reimbursed him. To me, the process is simple. When a person is injured through no fault of his own, all available insurance coverage proceeds, from whatever source, go into one pot. Only after the injured person is made whole for the full extent of the damages he has suffered may the insurance company take anything from that pot. The purpose of this approach is to ensure that the primary concern in any case where the insurer seeks to subrogate is the insured being made whole for the full extent of his losses — not merely for discrete elements of damages. In Van Orden’s case, this means that while he may not be able to recover additional amounts from the Alpha Policy to compensate him for his property damage, funds from that policy may be available to help cover his attorney’s fees, for instance. I do not concede that Van Orden could not recover directly from the tortfeasor’s policy any more than he already recovered from USAA — it is impossible to determine whether that is true when Van Orden still asserts he has not been made whole.
¶43 The majority Opinion will now allow insurance companies to seek subrogation before the injured person has been made whole. I fear that this Opinion represents an incremental shift away from a state of law in which “the insured’s interests are the primary concern,” DeTienne, 266 Mont. at 190, 879 P.2d at 708, and towards one in which the Court will protect the financial interests of the insurance company to the detriment of the injured person.