OP 13-0430

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 45

ROBERT VAN ORDEN,

       Plaintiff,

    v.

UNITED SERVICES AUTOMOBILE ASSOCIATION;
USAA CASUALTY INSURANCE COMPANY;
USAA GENERAL INDEMNITY COMPANY; and
GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Defendants.

| APPEAL FROM: | Certified Question, United States District Court, District of Montana, Great Falls Division, Cause No. CV-11-69-GF-SEH Honorable Sam E. Haddon, Presiding Judge |
|---|---|

COUNSEL OF RECORD:

      For Plaintiff:

           Allen Page Lanning (argued), Lanning, Harris & Conklin, P.C.,
           Great Falls, Montana

      For Appellee:

           David M. McLean (argued), M. Christy S. McCann, Browning, Kaleczyc,
           Berry & Hoven, P.C., Missoula, Montana

           Paul L. Stoller, Gallagher & Kennedy, P.A., Phoenix, Arizona

                 Argued and Submitted:  December 11, 2013
                             Decided:  February 19, 2014

Filed:

_____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1　The United States District Court for the District of Montana, Helena Division, the Honorable Sam E. Haddon presiding, certified the following question to this Court:

¶2　*Does Montana law prohibit an insurer from exercising its rights of subrogation to seek payment from the separate property damage coverage of the liable third-party's automobile insurance for the discrete amounts paid by the insurer for property damage where:*

　*(a) the insured has suffered both bodily injury and property damage in an accident;*
　*(b) the insurer's property damage payments were made under separate, optional collision coverage for physical damage to the insured's vehicle;*
　*(c) the amounts sought from the liable third-party's automobile insurance are covered by separate property damage liability coverage that is not exhausted by the amounts sought by subrogation;*
　*(d) the insured has been fully compensated by payment from his insurer for the property damage loss—including all costs associated with the property damage loss—and made whole as to the property damage loss that he insured as a result of the accident; and*
　*(e) the insured contends he has not been made whole from the separate personal injury liability coverage of the liable third-party's automobile insurance and the underinsured motorist coverage of his own automobile insurance policy?*

¶3　We accepted the certified question and now answer that Montana law does not prohibit an insurer from exercising its right of subrogation under the specific listed conditions.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4　We summarize the undisputed facts from the U.S. District Court's certification order. On October 26, 2009, Robert Van Orden (Van Orden) was involved in a motor vehicle accident caused by another driver. Van Orden carried an automobile insurance policy (the USAA Policy) through United Services Automobile Association General Indemnity Company (USAA). The USAA Policy included separate, optional collision

2

coverage (Part D). Part D applied to losses suffered by Van Orden's vehicle as a result of a collision. It covered the actual cash value of the loss minus a $500 deductible. The USAA Policy defined "loss" as:

> direct and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto or equipment and accessories that are not permanently installed in your covered auto. Loss includes a total loss, but does not include any damage other than the cost to repair or replace. Loss does not include any loss-of-use, or diminution in value that would remain after repair or replacement of the damaged or stolen property.

Other provisions of the USAA Policy included underinsured motorist (UIM) coverage with bodily injury limits of $25,000 per person and $50,000 per accident.

¶5  The at-fault driver maintained automobile insurance coverage at the time of the accident through Alpha Property & Casualty Insurance Company (the Alpha Policy) which was underwritten by Unitrin Specialty Insurance (Unitrin). The Alpha Policy included liability limits of $25,000 per person for bodily injuries and a separate limit of $25,000 for property damage per accident.

¶6  As a result of the accident, Van Orden sustained both bodily injury and property damage. His property damage included $12,261.75 in vehicle repair costs and $720 for the use of a rental car. The parties agree that this $12,981.75 is the total amount of property damage incurred by Van Orden as a result of the accident. USAA paid the vehicle repair and car rental costs directly to the merchants who supplied those services for Van Orden. Because the at-fault driver carried an active insurance policy, USAA waived Van Orden's $500 deductible; Van Orden incurred no out-of-pocket expenses for his property damage.

3

¶7    For the bodily injuries suffered because of the accident, Van Orden recovered $24,430.19 from Unitrin under the bodily injury liability limits of the Alpha Policy and $50,000 from USAA under the UIM coverage of the USAA Policy. Van Orden claims that his bodily injury damages and costs to recover those damages exceed both the payments he has received and the limits of the bodily injury liability coverage of the Alpha Policy and the UIM coverage of his Policy.

¶8    USAA sought subrogation for the property damage expenses from Unitrin on November 24, 2009. On December 8, 2009, Unitrin paid USAA $12,981.75 out of the property damage liability limits of the Alpha Policy.

¶9    On February 24, 2011, Van Orden filed an action in Montana's Eighth Judicial District Court, Cascade County, on behalf of himself and a putative class of plaintiffs. He alleged that USAA violated Montana law by seeking subrogation for property damage loss from a tortfeasor's automobile liability insurer before its insured had been made whole with respect to related personal injuries. USAA removed the action to the U.S. District Court for the District of Montana and filed a motion for summary judgment; following a hearing, the U.S. District Court certified its question to this Court.

**STANDARD OF REVIEW**

¶10    When answering a certified question from another qualifying court as permitted by M. R. App. P. 15(3), our review is "purely an interpretation of the law as applied to the agreed facts underlying the action." *BNSF Ry. Co. v. Feit*, 2012 MT 147, ¶ 6, 365 Mont.

4

359, 281 P.3d 225 (quoting *State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 2009 MT 349, ¶ 4, 353 Mont. 173, 219 P.3d 1249).

## DISCUSSION

¶11 Subrogation is the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Black's Law Dictionary* 1563-64 (Bryan A. Garner ed., 9th ed., West 2009). Subrogation acts as an equitable device "designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it." *Skauge v. Mt. States Tel. & Tel. Co.*, 172 Mont. 521, 524, 565 P.2d 628, 630 (1977). "'It is an appropriate means of preventing unjust enrichment.'" *DeTienne Assocs. Ltd. Partn. v. Farmers Union Mut. Ins. Co.*, 266 Mont. 184, 188, 879 P.2d 704, 707 (1994) (quoting *Youngblood v. Am. States Ins. Co.*, 262 Mont. 391, 866 P.2d 203 (1993)). An insurer who has indemnified its insured usually is subrogated to the insured's rights of recovery against a third party who is responsible for the loss. *Skauge*, 172 Mont. at 524, 565 P.2d at 630. The policy underlying this equitable right of subrogation is that "absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in the absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss." *Skauge*, 172 Mont. at 524-25, 565 P.2d at 630.

¶12 An insurer's right to subrogation is limited, however, by the recognition that an insured is entitled to be fully compensated for his or her damages. Known as the "made

5

whole doctrine," this principle was explained in *Skauge*, where we held that "when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor." *Skauge*, 172 Mont. at 528, 565 P.2d at 632. The plaintiffs in *Skauge* suffered fire damage in excess of the $4,000 policy limit paid out under their fire insurance policy through Unigard Insurance Group. *Skauge*, 172 Mont. at 523, 565 P.2d at 629. Seeking the remainder of their damages, Plaintiffs commenced a negligence action against the parties they believed to be responsible for the fire. *Skauge*, 172 Mont. at 523, 565 P.2d at 529. Because the Skauges had not yet been fully compensated for their losses, this Court reversed the district court's determination that Unigard was entitled to subrogation for the $4,000 paid under the insurance policy. *Skauge*, 172 Mont. at 528-29, 565 P.2d at 632.

¶13    The made whole doctrine is consistent with the equitable principles underlying subrogation because plaintiffs who are not yet compensated for their loss are not unjustly enriched by recovering from both parties, and third-party tortfeasors are not relieved of their legal obligation for the loss. "When the sum recovered by the Insured from the Tortfeasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, *the loss should be borne by the insurer[,] for that is a risk the insured has paid it to assume.*" *Skauge*, 172 Mont. at 528, 565 P.2d at 632 (quoting *St.*

6

*Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.*, 198 S.E. 2d 482, 484 (N.C. App. 1973)) (emphasis in original).

¶14 This Court has affirmed application of the made whole doctrine in numerous subsequent decisions. We held that the equitable subrogation principles articulated in *Skauge* control an insurer's subrogation rights over standard insurance policy language mandating repayment of all money paid out under the policy. *DeTienne*, 266 Mont. at 184, 879 P.2d at 704. We later answered "yes" to a certified question asking, "[i]s it the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to the contrary?" *Swanson v. Hartford Ins. Co.*, 2002 MT 81, ¶ 14, 309 Mont. 269, 46 P.3d 584.

¶15 The dissent to *Swanson* urged the Court to adopt a more narrow interpretation of when an insured is made whole—limiting the definition to all compensation, including costs and attorney's fees, for only that element of damage for which the insured purchased insurance. *Swanson*, ¶ 36 (Leaphart, J., concurring in part and dissenting in part). The majority dismissed this interpretation, stating, "[s]eldom to never do we find such perfect symmetry in an award or settlement. Typically, as here, the ultimate settlement (or judgment amount) is for a gross amount, without allocation for each particular element of loss." *Swanson*, ¶ 26.

¶16 Van Orden argues that this passage demonstrates that the *Swanson* court expressly declined to adopt the more narrow interpretation that USAA now asks us to embrace.

7

Such a reading of *Swanson* ignores the fact that those circumstances were not before the Court at that time. The Court there acknowledged, "If a plaintiff recovered a discrete amount from her insurer for a particular element of loss, and then recovered the identical amount from a third party, plus her costs and attorney fees associated with that recovery, and the amounts of each were specifically and separately determined either by agreement or in a judgment, then, in theory, subrogation should proceed." *Swanson*, ¶ 25. The Court declined to adopt this as a blanket rule, however, for fear that "we would be left to speculate as to whether the insured did recover the identical amount of the loss for which the insurer seeks subrogation." *Swanson*, ¶ 26.

¶17 Under the conditions set forth in the certified question, there is no need for speculation as to whether Van Orden is fully covered for the loss USAA seeks to recover. It is undisputed that Van Orden sustained $12,981.75 in total property damage, USAA paid that full amount under a separate and optional property damage portion of his policy, and USAA received that amount from a separate property damage liability limit of the at-fault driver's insurance policy. Now faced with the precise situation acknowledged in *Swanson*, we agree with our statement there that subrogation may proceed in these circumstances. The insured has been made whole for the element of damage for which he purchased insurance.

¶18 To hold otherwise would not give effect to § 33-23-203(2), MCA. The legislature revised this statute in 1997 to allow an insurer to include reasonable subrogation clauses in its contracts "to prevent duplicate payments for the same element of loss under the

motor vehicle liability policy . . . ." "When interpreting a statute, we first look to the plain meaning of its words." *Hendershott v. Westphal*, 2011 MT 73, ¶ 20, 360 Mont. 66, 253 P.3d 806. When the language of a statute is clear, it "speaks for itself and we will not resort to other means of interpretation." *Wolf v. Wolf*, 2011 MT 192, ¶ 11, 361 Mont. 324, 258 P.3d 995. Van Orden argues that duplicate payments do not arise under § 33-23-203(2), MCA, until an insured has been made whole for *all* damages—even those not covered under the policy at issue. He contends that the Court in *Swanson* specifically rejected the idea that the viability of the made whole doctrine was affected by the legislative adoption of § 33-23-203(2), MCA. USAA counters that Van Orden's interpretation ignores the plain language of the statute.

¶19 The statute expressly states that an insurer may prevent duplicate payments for the *same element of loss*. In *Swanson*, the insurer argued that § 33-22-203(2), MCA, as amended, limits the application of the made whole doctrine. *Swanson*, ¶ 22. We disagreed that the statute substantively altered the made whole doctrine, noting that "the common law and the statute jointly establish two rules of subrogation." First, "an insured should not receive duplicate payments for the same element of loss," and second, "the insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs." *Swanson*, ¶ 23.

¶20 The record was unclear in *Swanson* as to whether the plaintiffs were fully compensated for any particular element of loss. *Swanson*, ¶ 41 (Leaphart, J., concurring in part and dissenting in part). Our recent cases, however, make clear that an insured's

9

receipt of duplicate payments for the same element of loss may constitute a windfall to the insured if the coverage is limited to a discrete item, such as payment of medical expenses. *See Conway v. Benefis Health Sys.*, 2013 MT 73, ¶ 35, 369 Mont. 309, 297 P.3d 1200 (citing *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶ 38, 343 Mont. 279, 184 P.3d 1021). In *Conway*, we held that "medical payments coverage is for the payment of medical expenses only; it does not provide for the payment of additional or excess sums to the insured." *Conway*, ¶ 35. We rejected the insured's argument that he was entitled to pocket the difference between the medical payment coverage and his health insurance's contractual reimbursement rate. *Conway*, ¶ 35. In *Newbury*, the Plaintiff argued that a provision in his automobile insurance policy—disallowing coverage when medical expenses are payable by workers' compensation benefits—violated Montana public policy. *Newbury*, ¶ 43. While we agreed with Newbury that he paid valuable consideration to have his medical expenses paid, we held that because his medical expenses were paid through workers' compensation benefits, receiving in "excess of the total amount of his medical expenses would result in a windfall to Newbury." *Newbury*, ¶ 47.

¶21 Van Orden argues that because he has not yet recovered all of his personal injury damages, the amount USAA recovered under the tortfeasor's property liability limit must go toward making him whole for those damages. Other than pointing to the broad rule articulated in *Swanson*, however, Van Orden fails to present authority for the proposition that a sum received from a separate property liability portion of a tortfeasor's insurance

10

policy may be received as compensation for his personal injury damages. Similar to *Newbury* and *Conway*, he paid consideration to cover a potential loss and he received the benefit of that premium when USAA paid for all the costs associated with his property damage. He has not demonstrated how he could recover additional amounts directly from the property damage portion of the tortfeasor's policy. *See Conway*, ¶ 37. Even assuming that Van Orden's damages exceeded the combined payouts from USAA and Unitrin, under no circumstances would the remaining money available under the property damage coverage of the Alpha Policy spill over into the bodily injury pool of money, or be subject to attachment for the payment of attorney's fees or costs. Because this additional property damage money would not be available to Van Orden whatever the situation, USAA is clearly not asserting an interest in sums that Van Orden otherwise would be able to recover from the tortfeasor's policy. USAA is not taking any money out of Van Orden's pocket.

¶22 The Dissent's criticism of this conclusion is premised on its theory that "*all* available insurance coverage proceeds, from whatever source, go into one pot." Dissent, ¶ 42. Seemingly, this would mean that the Alpha Policy's property damage coverage, from which USAA is seeking recovery, should be available along with any other insurance proceeds to make Van Orden whole. Yet, the Dissent asserts that it is not advocating for this outcome. Dissent, ¶ 42. We therefore cannot understand what would be the effect of the Dissent's "one pot" proposal, nor has the Dissent explained how—by denying USAA its limited subrogation right—the pot of money available to make Van

11

Orden whole would somehow expand. It bears repeating that we have refused to permit subrogation in those cases where the sums the insurer is attempting to collect would deplete the sum of money otherwise available to the injured party from the liable third party.[1] The Dissent cites *Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 628 P.2d 667 (1981) and *Youngblood* for the proposition that we have refused to enforce contract provisions allowing subrogation before an insured is made whole. Dissent, ¶ 32. These cases pre-date the operative language in § 33-23-203(2), MCA, and involved an insurer attempting subrogation against *any* liability coverage the insured might have had against the third party. *Allstate*, 192 Mont. at 353, 628 P.2d at 668; *Youngblood*, 262 Mont. at 399, 866 P.2d at 207. As indicated, that is not the case here.

¶23 *Newbury* and *Conway* support our determination that access to additional payments for property damage under the Alpha Policy would result in a double recovery for the same element of loss. *See also Forsman v. United Fin. Cas. Co.*, 2013 U.S. Dist. LEXIS 118893 (D. Mont. Aug. 21, 2013) (No. CV 12-157-M-DWM) (Plaintiffs who had recovered their collision damages from third-party tortfeasor's coverage failed to make a

---

[1] *Compare Swanson*, ¶ 5 (Hartford sought to invoke a subrogation clause granting it the right to recover any payments to the insured under the insured's personal injury protection coverage if the insured recovers damages from a third party); *DeTienne*, 266 Mont. at 186-92, 879 P.2d at 706-09 (insurer sought subrogation rights for sums paid under a "special multi-peril insurance policy" based on language in policy that insurer "shall be subrogated to *all the insured's rights* of recovery against any third person"); *Skauge*, 172 Mont. at 523, 565 P.2d at 629 (policy language provided for assignment of "all right of recovery against any party for loss to the extent that payment therefore [sic] is made by this Company"); with *Newbury*, ¶¶ 38-39, 47 (insured not entitled to seek payment under *medical payments portion* of his policy when his employer's workers' compensation carrier already had paid his medical expenses); and *Conway*, ¶ 35 (relying on *Newbury*, holding that insured could not recover under medical payments coverage when his medical expenses already had been paid).

12

plausible claim that they were denied any "recoverable" damages under their own collision coverage in policy that denied duplicate recovery for same element of loss). That Van Orden is not yet made whole as to his personal injury damages does not control our analysis because Part D of the USAA Policy provided coverage for property loss only. "What [Van Orden] paid valuable consideration for in this case was to have his [property damage] expenses paid and it is undisputed that his [property damage] expenses were paid." *Newbury*, ¶ 47.

¶24 The Dissent acknowledges that "the subrogated insurer stands in no better position than the insured . . . ." Dissent, ¶ 40 (quoting *DeTienne*, 266 Mont. at 189, 879 P.2d at 707). The point the Dissent concedes is that, standing in his own position, Van Orden could not recover directly from the third-party tortfeasor's property damage policy coverage any more than he already recovered from USAA. USAA recovered only the amount of property damage suffered by Van Orden, which it had wholly covered for him under Part D of the policy.

¶25 When a settlement or judgment does not allocate payment for separate elements of loss under discrete portions of a policy for which a premium separately has been paid, subrogation may not proceed until the insured is made whole for all of his or her damages. But when, as here, damages are discrete, readily-ascertainable, and completely covered under a separate policy or portion of the policy for which a separate premium has been paid, subrogation may proceed as to that element of loss only. According proper deference both to the plain language of the applicable statute and to this Court's prior

13

rulings, this holding balances an insurer's statutory right to prevent double recovery and an insured's right to be made whole for all of his or her damages.

¶26 Based on the foregoing, we answer the certified question "no": Montana law does not prevent an insurer from exercising its right to subrogation under the limited, specific circumstances presented in the certified question.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ MIKE SALVAGNI
District Court Judge
sitting in for former Justice Brian M. Morris

Justice Michael E Wheat dissents.

¶27 I would answer yes to the certified question. For over thirty-five years, this Court has uniformly upheld the strong public policy protecting injured persons when insurance companies seek subrogation. What the majority does, here, is create an exception that erodes the strength of this precedent.

¶28 Montana case law prohibits subrogation in this case because Van Orden asserts he has not been made whole. *See* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* vol. 16, § 223:149, 223-168 (West 2005) ("When the make whole rule is applied to a

14

circumstance in which the insurer and insured are not in agreement as to whether the insured has, in fact, been made whole so as to allow the insurer to make some recovery of its payment, there must be a legal determination of that fact."); *see also Skauge v. Mt. States Tel. & Tel. Co.*, 172 Mont. 521, 528, 565 P.2d 628, 632 (1977) ("[T]he insured is entitled to be made whole for his *entire loss* and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.") (emphasis added); *Youngblood v. Am. States Ins. Co.*, 262 Mont. 391, 396, 866 P.2d 203, 206 (1993) ("With some exceptions, subrogation against an insured is allowed if that insured has been made whole and has been *fully compensated*, which compensation includes costs and attorney's fees.") (emphasis added); *DeTienne Assocs. Ltd. Partn. v. Farmers Union Mut. Ins. Co.*, 266 Mont. 184, 191, 879 P.2d 704, 708-09 (1994) ("[A]n insured must be *totally reimbursed* for all losses as well as the costs involved in recovering those losses. The insured has paid premiums to be insured.") (emphasis added); *Swanson v. Hartford Ins. Co.*, 2002 MT 81, ¶ 28, 309 Mont. 269, 46 P.3d 584 ("[I]t is the public policy in Montana that an insured must be *totally reimbursed* for all losses as well as costs, including attorney fees, involved in recovering those losses *before the insurer can exercise any right of subrogation*, regardless of any contract language providing to the contrary.") (emphasis added). Following in the footsteps of the U.S. District Court for the District of Montana in *Forsman v. United Fin. Cas. Co.*, CV 12-157, ___ F. Supp. 2d ___ (Mont. Aug. 21, 2013), the majority now dissects the insurance coverages in such a way that our long-

15

standing made whole doctrine is undermined.  The majority's reasoning paints the injured party as recovering a windfall, even though the injured party paid for the coverage the insurance company seeks to subrogate, before a total made whole determination has occurred.  "Any change in the law that results in the insurer avoiding transfer of part or all of the risk for which it accepted premiums is destructive to the very foundation and purpose of insurance."  Greg Munro, *Medical Pay Coverage, Bodily Injury Coverage, and the Group Health Plans:  Who is Going to Pay Tort Medical Expenses and When?*, Trial Trends 16, 17 (Winter 2014).  The majority's departure from all of our precedent regarding subrogation undermines the made-whole doctrine to the detriment of insured Montanans.

¶29　We have long recognized in the field of liability insurance that it is good public policy to protect and defend the injured person's right to be made whole before an insurance company is allowed to subrogate, especially when the injured person has paid for the coverage at issue. *Skauge*, 172 Mont. at 528, 565 P.2d at 632; *DeTienne*, 266 Mont. at 190, 879 P.2d at 708; *Swanson*, ¶ 28.  It is also a longstanding principle that if someone must suffer a loss, it should be the insurance company, not the injured person. *Skauge*, 172 Mont. at 528, 565 P.2d at 632; *DeTienne*, 266 Mont. at 190, 879 P.2d at 708; *Swanson*, ¶ 27.  "The only practical way we can satisfy this principle is to allow full compensation to the plaintiff first, before subrogation is allowed."  *Swanson*, ¶ 27. Unfortunately, in this case the majority has opened the door for insurance companies to

16

start chipping away at the made whole doctrine under the guise of allowing subrogation between "discrete" coverages, even if the injured person has not been made whole.

¶30    The majority's approach effectuates a change in the law by allowing insurance companies to divide what it means to be "made whole" into discrete elements of loss. There are essentially two approaches to what it means to be made whole.  Jeffrey A. Greenblatt, *Insurance and Subrogation: When the Pie Isn't Big Enough, Who Eats Last?*, 64 U. Chi. L. Rev. 1337, 1343-44 (Fall 1997).  The first approach, which this Court has traditionally followed, is to allow subrogation only when the insured has been compensated "*for all the elements of damage, not merely those damages for which the insurer has indemnified him*."  Greenblatt, 64 U. Chi. L. Rev. at 1344 (emphasis added); *see* Russ & Segalla, *Couch on Insurance 3d* at § 223:133, 223-146 to 223-149.  The second will allow separate elements of a damage award to be identified and credited to the subrogated claims, even if the insured has not been made whole with regard to his other claims.  Greenblatt, 64 U. Chi. L. Rev. at 1344.  The second approach generally relies on principles of contract law to allow insurers to contract around the traditional made whole doctrine.  *See e.g. Gibson v. Country Mut. Ins. Co.*, 549 N.E.2d 23 (1990); *Forsman*; *see also* Russ & Segalla, *Couch on Insurance 3d* at § 223-147, 223-163 to 223-165.  Courts adhering to the first approach have generally held that the equitable principles underlying subrogation override contract terms of this nature. Russ & Segalla, *Couch on Insurance 3d* at § 223:148, 223-166 to 223-167.  Adopting the second view, now, is a shift in the law.

¶31　This Court's precedent has generally emphasized the equitable principles underlying subrogation in the context of the made whole doctrine.  We have explained that subrogation, at its origin, is a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it.  *Skauge*, 172 Mont. at 524, 565 P.2d at 630.  Accordingly, we held that:

> [W]hen the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.

*Skauge*, 172 Mont. at 528, 565 P.2d at 632.  We elaborated in *Youngblood* that "[s]ubrogation is an equitable doctrine which is not dependent on any contractual relationship between the parties and is not dependent on privity."  *Youngblood*, 262 Mont. at 395, 866 P.2d at 205.  In *DeTienne* we clarified the purpose of the *Skauge* ruling "is the adoption of the equitable principle that an insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses."  *DeTienne*, 266 Mont. at 191, 879 P.2d at 708.  We explained that the purpose of subrogation "is *not* to ensure that the risk-taker, the insurer, be compensated for all money it paid to policy holders[.]"  *DeTienne*, 266 Mont. at 189, 879 P.2d at 707 (emphasis added).

¶32　Relying on these equitable principles, we have declined to enforce contract provisions that would allow subrogation before an insured has been made whole.  In *Swanson*, we held:

> [I]t is the public policy in Montana that an insured must be totally reimbursed for *all losses as well as costs,  including attorney fees, involved*

18

*in recovering those losses* before the insurer can exercise any right of subrogation, *regardless of any contract language providing to the contrary.*

*Swanson*, ¶ 28 (emphasis added). We have allowed subrogation only after the insured has been fully made whole and declined to enforce contract provisions that would beg a different result. For instance, in *Youngblood* we overturned the contract-based reasoning we had used in *Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 628 P.2d 667 (1981), explaining that we had reached the correct result "not because there was a prohibited assignment of a personal injury claim, but because of the public policy reasons expressed therein . . . and because Allstate's right to reimbursement via subrogation was dependent upon the ability of the indemnified party to sue the tortfeasor." *Youngblood*, 262 Mont. at 397, 866 P.2d at 206. In *DeTienne* we cited *Youngblood* in refusing to strictly interpret a subrogation clause, instead emphasizing the equitable "purpose of subrogation." *DeTienne*, 266 Mont. at 189, 879 P.2d at 707. Transitioning to an approach that allows parties to contract around the made whole doctrine by splitting what it means to be "made whole" into discrete elements of loss, we open Pandora's box of potential contract-based arguments for eroding the equitable foundations of subrogation.

¶33 USAA does not cite a single case in which we have held that a made whole determination may be segmented into discrete elements of loss. Instead, USAA relies on Justice Leaphart's concurrence and dissent in *Swanson* and on a case from Louisiana. To support its contention that we should now allow such segmentation, USAA quotes language from *Swanson*, where we explained that "an insured should not receive duplicate payments for the same element of loss . . . ." *Swanson*, ¶ 23. Conveniently,

19

USAA omits the rest of the sentence following the quoted language: "[A]nd the insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs." These two principles, we explained in *Swanson*, are two rules of subrogation jointly established by the common law and statute. *Swanson*, ¶ 23. In the sentence directly prior to paragraph 23 in *Swanson*, we explained that "duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery."

¶34 The majority appears to accept USAA's argument and now incorrectly reads *Swanson* to permit segmenting a made whole determination, when that result is at odds with *Swanson*'s holding. In *Swanson*, we affirmed application of the made-whole doctrine based on the argument that it is difficult to tell whether an insured has been fully reimbursed for a particular element of loss. *See Swanson*, ¶ 26. This, it should be noted, is one of two common rhetorical devices courts used to reject insurers' requests for subrogation in the bodily injury context when precedent uniformly held that such subrogation was barred as a matter of public policy. *See* Brendan S. Maher & Radha A. Pathak, *Understanding and Problematizing Contractual Tort Subrogation*, 40 Loy. U. Chi. L.J. 49, 71 (2008). It stands to reason that the purpose of our language in *Swanson* was to cement the made whole doctrine, not to signal a situation in which the made whole doctrine might not apply. The majority, however, distinguishes the instant case on the basis that Van Orden has been reimbursed for the cost of his property damage. In

20

distinguishing *Swanson* on that basis, the majority will now allow USAA to subrogate before Van Orden has been made whole, ignoring *Swanson*'s unequivocal holding:

> [I]t is the public policy in Montana that an insured must be totally reimbursed for *all losses as well as costs, including attorney fees, involved in recovering those losses* before the insurer can exercise any right of subrogation, *regardless of any contract language providing to the contrary*.

*Swanson*, ¶ 28 (emphasis added).

¶35 The majority's argument that its resolution of this issue in this manner is necessary to give effect to § 33-23-203(2), MCA, allowing subrogation to prevent "duplicate payments for the same element of loss," also ignores *Swanson*. In *Swanson* this Court addressed duplicate payments, explaining that since we presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes, the statute should be read to provide that "duplicate payments do not occur until the insured has been made whole *for all losses, as well as costs of recovery*." *Swanson*, ¶ 22 (emphasis added). The majority, instead, distinguishes our reading of the statute in *Swanson* on the basis that "[t]he record was unclear in *Swanson* as to whether the plaintiffs were fully compensated for any particular element of loss." Opinion, ¶ 20 (citing *Swanson*, ¶ 41 (Leaphart, J., dissenting)). This reasoning adopts an approach that this Court specifically rejected in *Swanson*—engaging in a presumption that the insured was fully compensated, without full fact-finding. *Swanson*, ¶ 26. *Swanson* provided that it could not be determined whether the plaintiff had been fully compensated for any particular element of loss until the plaintiff had been made whole for all losses, as well as costs of recovery. That has not happened, here.

21

¶36 The facts of the instant case are also distinguishable from those in *Conway* and *Newbury*, on which the majority's opinion relies. Both of those cases involved only competing insurance policies carried by the insured injured party. The full extent of the injuries at issue was known at the time the cases were determined. Neither case involved a tortfeasor, or a tortfeasor's insurance company. Thus, the public policy concerns involved in subrogation where tort claims are at issue—compelling the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it—did not arise. In contrast, the full extent of the injuries at issue here is not known at this time because full fact-finding has not yet occurred. This case involves the injured party's insurer and the tortfeasor's insurer, as well as the tortfeasor himself. Pursuant to our decision in *Swanson*, it is inappropriate to allow subrogation until Van Orden has been made whole for all of his losses, including the cost of recovery.

¶37 The majority's approach to this issue is barred by the doctrine of *stare decisis*. The majority makes much of the fact that Van Orden "has not demonstrated how he could recover additional amounts directly from the property damage portion of the tortfeasor's policy." Opinion, ¶ 21. If the result will be the same regardless of whether we require that Van Orden be made whole for the full extent of his losses before subrogation can occur, *stare decisis* suggests we should adhere to the approach set forth in our precedent. *See Certain v. Tonn*, 2009 MT 330, ¶ 19, 353 Mont. 21, 220 P.3d 384 ("Faced with viable alternatives, *stare decisis* provides the preferred course.") (citations and quotation omitted). Indeed, *stare decisis* suggests we should follow our decisions

unless they are "manifestly wrong." *Allstate v. Wagner-Ellsworth*, 2008 MT 240, ¶ 39, 344 Mont. 445, 188 P.3d 1042. Allowing subrogation when Van Orden asserts he has not been made whole disturbs the stability and predictability of the law. *See Allstate*, ¶ 39. Instead of arriving at the result our precedent requires, the majority's approach disregards decades of well-established law in Montana to undermine the made whole doctrine.

¶38 Even if our well-settled precedent did not preclude the majority's approach, the balance of equities favors Van Orden because he asserts he has not been made whole for the full extent of his losses. As a matter of policy, subrogation in the tort context has, essentially, three main purposes: (1) to prevent unjust enrichment of the tortfeasor; (2) to deter future actors from engaging in similar torts; (3) to prevent unjust enrichment of the injured party with respect to the insurer. Maher & Pathak, 40 Loy. U. Chi. L.J. at 55. The first two are served simply by allowing an injured party to recover from the tortfeasor or the tortfeasor's insurer. At issue here is the third. Common arguments for allowing an insurance company to subrogate amounts recovered from a tortfeasor are that the injured party is "double recovering" or is recovering a "windfall." *See* Munro, Trial Trends at 16; Maher & Pathak, 40 Loy. U. Chi. L.J. at 57-59.

¶39 We have explained that no double recovery or windfall can occur unless and until the injured person has been fully made whole for the full extent of his losses. *See Swanson*, ¶ 22 ("duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery."). In addition, both the "double recovery" and

23

"windfall" arguments—though initially attractive through their appeal to a sense of fundamental fairness—suffer from fatal flaws.

¶40 The "double recovery" argument is premised on an assumption that the injured party is only entitled to *either* proceeds from the insurance policy the party has paid for *or* to recover from a tortfeasor. In fact, as we explained in *DeTienne*:

> The insurer cannot assert any claim by way of subrogation unless the insured has a claim against the third person to which the insurer can be subrogated for the reason that the subrogated insurer stands in no better position than the insured, and cannot recover over against the wrongdoer unless the insured could have done so, for if the insured had no right of action against the wrongdoer none can pass to the insurer by way of subrogation. . . . *Otherwise stated, subrogation by definition and of necessity presupposes the existence of a right of the insured against some third person or fund* . . . .

*DeTienne*, 266 Mont. at 189, 879 P.2d at 707 (quoting G.Couch & R.Anderson, 16 *Couch Cyclopedia of Insurance Law*, Subrogation, § 61:114, 183-84 (1983)) (emphasis added). In subrogation, the insured injured party surrenders damages to which he is entitled to reimburse his insurance company for benefits he has paid a premium to receive. In reality, it is the insurance company seeking subrogation that is, potentially, unjustly enriched, if the injured person has not been made whole for the losses caused by the tortfeasor. *See DeTienne*, 266 Mont. at 192, 879 P.2d at 709 (a situation in which the insured loses money—for instance, paid for litigation of excessive damage, plus premiums paid to the insurer—is akin to unjust enrichment and is not equitable). To ensure that the injured party is made whole, and to discourage the possibility that the company might be unjustly enriched vis-a-vis the injured party, we have always required

24

that the injured party be fully made whole before any subrogation can occur. *See Swanson*, ¶ 28. Here, there is no danger of double-recovery at this time because Van Orden has not been made whole for all his losses, including costs of recovery.

¶41 The windfall argument also fails pursuant to the rule from *Swanson*. In addition, however, insurance companies often will have adjusted premiums to account for subrogation recoveries, or lack thereof. Where that has occurred there is no "windfall" to the insured, because the insured implicitly paid higher premiums for the right to keep tort proceeds. Maher & Pathak, 40 Loy. U. Chi. L.J. at 58. It is not clear what USAA's practice is in this regard—which is precisely why further fact-finding is needed to address Van Orden's contention that he has not been made whole.

¶42 I would adhere to the approach to this issue set forth in our precedent. I am not asserting that Van Orden would be entitled to the Alpha Policy's property damage coverage to pay for losses for which his USAA insurance policy had already reimbursed him. To me, the process is simple. When a person is injured through no fault of his own, all available insurance coverage proceeds, from whatever source, go into one pot. Only *after* the injured person is made whole for the full extent of the damages he has suffered may the insurance company take anything from that pot. The purpose of this approach is to ensure that the primary concern in any case where the insurer seeks to subrogate is the insured being made whole for the full extent of his losses—not merely for discrete elements of damages. In Van Orden's case, this means that while he may not be able to recover additional amounts from the Alpha Policy to compensate him for his property

25

damage, funds from that policy may be available to help cover his attorney's fees, for instance. I do not concede that Van Orden could not recover directly from the tortfeasor's policy any more than he already recovered from USAA—it is impossible to determine whether that is true when Van Orden still asserts he has not been made whole.

¶43 The majority Opinion will now allow insurance companies to seek subrogation before the injured person has been made whole. I fear that this Opinion represents an incremental shift away from a state of law in which "the insured's interests are the primary concern," *DeTienne*, 266 Mont. at 190, 879 P.2d at 708, and towards one in which the Court will protect the financial interests of the insurance company to the detriment of the injured person.

/S/ MICHAEL E WHEAT