JUSTICE SANDEFUR,
dissenting.
¶18 I dissent. The essential lynchpin of the Majority opinion is the conclusion that MIGA’s statutory claim for reimbursement of liability insurance proceeds paid to a work-comp claimant on behalf of an insolvent Plan 2 insurer is “essentially [a] third-party indemnity claim[]” against the employer in contravention of the exclusivity provision of § 39-71-411, MCA. Without consideration of the meaning of “indemnity” or the qualifying statutory reference to third-parties “from whom damages are sought on account of’ injury to an employee, the Majority’s conclusion erroneously stretches the language and intent of § 39-71-411, MCA, too far in disregard of the perfectly harmonious, clear, and unambiguous provisions of the Montana Insurance Guaranty Association Act (MIGA Act).
¶19 In pertinent part, the exclusive remedy provision of the Montana Workers’ Compensation Act (WCA) provides that “an employer is not subject to any liability whatever for the death of or personal injury to” a covered employee “or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death.” Section 39-71-411, MCA (emphasis added). Though the WCA does not define the terms “contribution” or “indemnity,” statutory terms having technical legal meaning are defined by their “peculiar and appropriate meaning in law.” Section 1-2-106, MCA (construction of undefined statutory terms). “Contribution” is a limited statutory claim of right, by a joint tortfeasor against one or more others, for equitable apportionment of the damages caused by the combined tortious conduct of the multiple tortfeasors. See § 27-1-703(1), MCA (1997); Consolidated Freightways Corp. of Delaware v. Osier, 185 Mont. 439, 446, 605 P.2d 1076, 1080 (1979) (noting 1977 Montana statutory provision of limited right of contribution in derogation of common law principle of joint and several liability), superseded on other grounds by § 27-1-703, MCA (1981). No claim for contribution is at issue in this case.
*490 ¶20 Indemnity may refer to contract indemnity or equitable indemnity. Contract indemnity arises under “a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person.” Section 28-11-301, MCA. Indemnity is a contract “obligation by one party to make another whole for a loss that the other party has incurred.” Crone v. Crone, 2003 MT 238, ¶ 30, 317 Mont. 256, 77 P.3d 167. Insurance is a form of contract indemnity where, by contract, “one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies.” Section 33-1-201(5)(a), MCA.
¶21 Equitable indemnity “shifts the entire loss from one party compelled [by law] to bear it” to another who in equity should be responsible to “bear it instead.” Consolidated Freightways, 185 Mont. at 447, 605 P.2d at 1081. A claim for equitable indemnity is a claim: (1) by a person without fault; (2) who is vicariously or otherwise imputed liable to a third-party for injury and damages caused by another’s tortious conduct; and (3) for the amount the person had to pay to compensate the third-party for the injury and damages caused by the tortfeasor. Poulsen v. Treasure State Indus., Inc., 192 Mont. 69, 82, 626 P.2d 822, 829 (1981); Consolidated Freightways, 185 Mont. at 447-48, 605 P.2d at 1081; Crosby v. Billings Deaconess Hosp., 149 Mont. 314, 320, 426 P.2d 217, 220 (1967); see also State ex rel. Deere & Co. v. Montana 5th Jud. Dist. Court, 224 Mont. 384, 398-99, 730 P.2d 396, 405-06 (1986) (rejecting distinction between “active” negligence and merely “passive” or “secondary” negligence in re equitable indemnity) superseded on other grounds by § 27-1-703, MCA (1987). Indemnity “is an all-or-nothing proposition” that “proceeds from a different legal basis than contribution.” Cordier v. Stetson-Ross, Inc., 184 Mont. 502, 509, 604 P.2d 86, 90 (1979). Equitable indemnity is not applicable “where both parties are joint tortfeasors or in pari dilecto.” Poulsen, 192 Mont. at 82, 626 P.2d at 829; accord Consolidated Freightways, 185 Mont. at 448, 605 P.2d at 1081. Accordingly, for purposes of § 39-71-411, MCA, a “claim for indemnity” is a claim: (1) against an employer; (2) by a third-party who is liable without fault for an employee’s injury or death;[1] (3) for the amount the third-party has to pay to compensate the employee or survivors; and (4) for an injury or death caused by the conduct of the employer.
*491 ¶22 In contrast to the concepts of contribution and indemnity as referenced in § 39-71-411, MCA, the Montana Insurance Guaranty Association (MIGA) is a “nonprofit association of insurance companies” with the primary statutory duty to pay covered claims payable under an insurance policy issued by an insolvent insurer and left unpaid prior to the insolvency. Howell v. State, 263 Mont. 275, 281, 868 P.2d 568, 571 (1994); accord § 33-10-105(1)(a),MCA. MIGA essentially steps into the shoes of an insolvent insurer and is considered by law to be the insurer to the extent of the insolvent insurer’s obligation under the policy. Section 30-10-105(1)(b), MCA. At issue here, the MIGA Act authorizes MIGA to recover from the insured the amount paid on behalf of an insolvent insurer if the insured has assets in excess of $50 million. Section 33-10-114(2)(a), MCA.
¶23 In lieu of common law liability for unintentional torts, every employer has a duty to provide workers’ compensation insurance coverage to employees under one of three statutorily options. Sections 39-71-401(1), -411, MCA. Here, Asurion elected to provide work-comp insurance to its employees through Lumbermens, a private insurance provider. After a court of competent jurisdiction declared Lumbermens insolvent, MIGA stepped in and ultimately settled the underlying work-comp claim asserted by Asurion’s employee. MIGA then sought reimbursement from Asurion pursuant to § 33-10-114(2)(a), MCA.
¶24 As a matter of law, MIGA’s claim against Asurion is not a claim for contract indemnity. No contractual relationship existed between MIGA and Asurion. Though MIGA statutorily filled the shoes of Asurion’s insolvent insurer, it did so only “to the extent of’ the insolvent insurer’s obligation under the policy to compensate Asurion’s employee for her work-related injury. Section 33-10-105(l)(b), MCA. Though related, MIGA’s duty to satisfy the insolvent insurer’s obligation to compensate the injured worker arose as a matter of statute independent of any contractual relationship between MIGA and the insolvent insurer, or between MIGA and Asurion. Thus, MIGA’s claim against Asurion is not a claim for contract indemnity. ¶25 As a matter of law, MIGA’s claim against Asurion is also not a claim for equitable indemnity. MIGA is not a third-party who, by virtue of its relationship to Asurion, was vicariously or otherwise imputed liable for a breach of duty owed to an employee by Asurion. MIGA’s duty to compensate Asurion’s employee did not arise from any vicarious or imputed duty of care. MIGA’s duty to compensate Asurion’s employee arose independently under the MIGA Act. Thus, MIGA’s claim against Asurion was not a claim for equitable indemnity within the meaning of § 39-71-411, MCA.
*492 ¶26 This Court has previously recognized the difference between claims against employers that arise from a vicarious or imputed duty of care to an employee as distinct from those based on independent legal obligations. In Cordier, a paper mill worker employed by Champion International who was seriously injured on the job while operating an industrial gang saw asserted a negligence-based products liability claim against the manufacturer of the saw. Cordier, 184 Mont. at 504-05, 604 P.2d at 88. In turn, the manufacturer asserted third-party claims for contribution and indemnity against Champion on the asserted ground that the employer negligently failed to adequately instruct, supervise, and warn its employees regarding the operation of the saw. Cordier, 184 Mont. at 505, 604 P.2d at 88. At the time, § 39-71-411, MCA, did not expressly exempt employers from third-party contribution and indemnity claims as it does now. See § 92-2004, R.C.M. (1947). In holding that § 39-71-411’s general exemption of employers from “any liability whatever” precluded the third-party contribution and indemnity claims against the employer, this Court clearly distinguished an exclusivity-barred equitable indemnification claim arising from the employer’s duty to provide work-comp coverage, from a permissible contract indemnification claim against an employer based on an independent legal obligation arising “separate and apart from any obligation owed through the injury to the employee.” Cordier, 184 Mont. at 511-12, 604 P.2d at 90-91 (citing DeShaw v. Johnson, 155 Mont. 355, 472 P.2d 298 (1970)).
¶27 In DeShaw, a construction worker who was seriously injured by electrocution and falling from a utility pole while performing contract construction work asserted a negligence claim against the rural and electrical cooperatives that contracted with the worker’s employer for the work. DeShaw, 155 Mont. at 356-57, 472 P.2d at 299-300. The cooperatives in turn asserted a third-party contract indemnity claim against the construction worker’s employer. DeShaw, 155 Mont. at 356-57, 472 P.2d at 299-300. In holding that § 39-71-411, MCA (formerly § 92-203, R.C.M. (1947)), did not bar the indemnity claim based on a special contract provision wherein the employer agreed to indemnify the cooperatives for such liability, this Court rejected the assertion that the employer:
cannot be liable for more than workman’s compensation benefits to its employees, that such compensation is the measure of [the employer’s] full liability, and that it cannot be subjected to any additional liability to the third-party plaintiff or anyone else because of the injuries sustained by the [worker].
*493 DeShaw, 155 Mont. at 359-61, 472 P.2d at 301-02. We noted that the immunity conferred by § 39-71-411, MCA:
is only against actions for damages on account of the employee’s injury, a third-party’s action for indemnity is not exactly for ‘damages’ but for reimbursement, and it is not ‘on account of the employee’s injury, but on account of breach of an independent duty owed by the employer to the third party.
DeShaw, 155 Mont. at 361, 472 P.2d at 302 (internal quotation omitted and emphasis added). We thus concluded “that the legislature had in mind [only] those who might attempt to recover through some relationship with the injured [worker], and not anyone ... who seeks to recover on an obligation separate and apart from that owing to the injured employee.” DeShaw, 155 Mont. at 361, 472 P.2d at 302 (emphasis added).
¶28 While Cordier was still pending before this Court, the 1979 Montana Legislature prospectively amended § 39-71-411, MCA, to expressly preclude the type of third-party contribution and equitable indemnity claims at issue in Cordier. See § 39-71-411, MCA (1979) (as amended by Ch. 329, L. 1979 (SB 322)).[2] Neither the language nor legislative history of Ch. 329, L. 1979 (SB 322) evinces any indication of legislative intent to eliminate or limit the independent duty-based employer liability distinction recognized in DeShaw and Cordier. To the contrary, Cordier and the related language and legislative history of Ch. 329, L. 1979 (SB 322) clearly manifest that § 39-71-411’s express exemption of employers from “any liability whatever” and its supplemental express bar on third-party indemnity claims certainly bar third-party equitable indemnity claims as in Cordier, but not related third-party claims based on an obligation to a third-party independently imposed by law on the employer.
¶29 Here, as in DeShaw, MIGA’s independent statutory *494 reimbursement claim against Asurion is not an equitable indemnity claim as in Cordier or within the meaning of § 39-71-411, MCA. Based on a reimbursement obligation independently imposed by statute, MIGA’s claim is also not a contract indemnification claim. Even if arguably akin to a contract indemnification obligation, the claim would still be permissible under the distinction recognized in DeShaw and Cordier and which has now stood undisturbed by the Legislature for 47 years.
¶30 Moreover, as in DeShaw where the employer created the additional liability potential by entering into a construction contract with a special indemnification provision, Asurion’s additional liability exposure under § 33-10-114(2)(a), MCA, was the result of its discretionary election to provide required work-comp insurance to its employees through a private insurer rather than through the State Fund or self-insurance. With express exceptions not applicable here, the MIGA Act applies to all “insurers” authorized by law to engage in the business of “insurance” in Montana. Sections 33-10-101(3), -102(4), -103, MCA; see also § 33-1-201(2), (5)(a), (6), MCA (definitions of authorized insurer, insurance, and insurer). Under the WCA, each employer has the option of choosing one of three statutorily authorized plans for providing required work-comp insurance. Section 39-71-401(1), MCA. Plan 1 allows a qualified employer to self-insure. Sections 39-71-2101 through -2109, MCA. Plan 2 allows employers to provide required insurance through any private insurance company authorized to transact business in Montana. Sections 39-71-2201 through -2215, MCA. Plan 3 allows employers to provide required insurance through the publicly administered State Fund. Sections 39-71-2311 through -2316, MCA.
¶31 A Plan 1 self-insurer is not an “insurer” subject to the Montana Insurance Code or the MIGA Act. See §§ 39-71-2101(1), 33-1-102(5), 33-2-201(5)(a), (6), 33-10-102(2), (3), MCA (definition of Plan 1 self-insurer, exemption from Insurance Code, definitions of insurance and insurer, MIGA Act applicability).[3] Similarly, prior to 2015, the Plan 3 State Fund was also not an “insurer” subject to the Montana Insurance Code or MIGA coverage. See §§ 39-71-2311, -2312(3), 33-1-102(5), MCA (2013) (definition of Plan 3, express exemption from Insurance Code, *495 and MIGA Act applicability).[4] Consequently, an election to provide required work-comp coverage under Plans 1 or 3 would not have subjected Asurion to potential MIGA reimbursement liability under § 33-10-114(2), MCA.
¶32 In contrast, the MIGA Act applied to Plan 2 work-comp insurance carriers at all times pertinent, thus requiring them, inter alia, to contribute to the pooled costs of adjusting MIGA-covered claims. See §§ 39-71-2201(1), 33-10-101(3), -102(4), -103, -106(2), and -116, MCA (definition of Plan 2 insurer, MIGA Act applicable “to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance,” definition of MIGA member, imposition of MIGA membership as condition of authority to transact business in Montana, member duty to comply with MIGA plan of operation, and MIGA assessment authority). By electing to provide required work-comp insurance through a Plan 2 insurer, Asurion exposed itself to additional potential liability under § 33-10-114(2), MCA, in the event that its selected private insurer became insolvent. As in DeShaw, Asurion’s additional liability is not for damages on account of work-related injury to an employee but, rather, for an obligation independently imposed by law.
¶33 The WCA and MIGA Act are both creations of the Legislature. The Legislature presumably “does not intend to interfere with” its prior enactments unless expressly stated or a subsequent enactment is irreconcilable with a prior one. Alkire v. Mun. Court , 2008 MT 223, ¶ 11, 344 Mont. 260, 186 P.3d 1288 (internal quotation omitted). The Legislature is presumed to act deliberately with full knowledge of existing law on a subject. State v. Brendal, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448. This Court must harmonize statutes where possible to give effect to both in accordance with the Legislature’s plain language and manifest intent. See Brendal, ¶ 18. No need or justification exists for resort to statutory construction of a specific provision over a more general provision where both provisions are clear, unambiguous, and not in conflict. Van Orden v. United Servs. Auto. Ass’n, 2014 MT 45, ¶ 18, 374 Mont. 62, 318 P.3d 1042.
¶34 No conflict exists between the exclusivity provision of § 39-71-411, *496 MCA, and the MIGA Act reimbursement provision of§ 33-10-114(2)(a), MCA. Neither is more specific than the other. The Legislature was well aware of the WCA exclusivity provision as it existed in 1971 at the time of enactment of the MIGA Act. The 1979 amendment of § 39-71-411, MCA, to expressly bar claims against employers “for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death” of a covered employee had nothing to do with the MIGA Act in general or § 33-10-114(2)(a), MCA, in particular. The 1979 amendment was a specific legislative response to a specific problem, i.e., the type of contribution and equitable indemnity claims at issue in Cordier. Nothing more.
¶35 In 2007, the Legislature enacted § 39-71-2215, MCA, to require Plan 2 insurers to post a security deposit to further secure their insurance obligation to injured workers. Ch. 117, § 15, L. 2007 (SB 108). Inter alia, the 2007 enactment authorized the Department of Labor and Industry to release all or part of a security deposit to MIGA in the event of a Plan 2 insurer’s insolvency and MIGA assumption of the insurer’s obligations. Section 39-71-2215(5), MCA. The 2007 Legislature also exempted Plan 2 captive reciprocal insurers from the MIGA Act. Section 39-71-2201(3), MCA (Ch. 117, § 10, L. 2007). Though prospective in effect, these 2007 WCA amendments clearly evidence the Legislature’s prior provision, intent, and understanding that the 1971 MIGA Act has always applied to Plan 2 insurers except as the Legislature has otherwise expressly provided.
¶36 Thus, it has always been and remains the express provision and intent of the Legislature that the MIGA Act reimbursement provision of § 33-10-114(2), MCA, apply to non-captive Plan 2 insurers with assets in excess of $50 million. This construction of the WCA and MIGA Act is not a judicial erosion of the essential public policy compromise embodied in the WCA. This construction effects the manifest intent of the Legislature in both enactments. It is purely the result of a legislative prerogative that the Legislature is free to further address as it sees fit. The District Court erroneously concluded that the exclusivity provision of § 39-71-411, MCA, precludes application of the MIGA reimbursement provision of § 33-10-114(2), MCA, in this case. I would reverse and remand for further proceedings. I dissent.

 See Deere, 224 Mont. at 398-99, 730 P.2d at 405-06 (rejecting distinction between “active” negligence and merely “passive” or “secondary” negligence in re equitable indemnity).

 Clearly indicating Senate Bill 322’s relation to the third-party contribution and indemnity claims at issue in Cordier, the bill’s sponsor testified that its purpose was to expressly protect employers from the “new problem” that “emerged” from modern “developments in products liability law” wherein a third-party liable in tort for the design, manufacture, or sale of defective industrial equipment “then sues the employer for the amount sought by the employee on theory of implied or expressed indemnity.” Hearing on SB 322 Before the S. Judiciary Comm., 46th Leg., Reg. Sess. (Mont. 1979) (statement of Sen. John E. Healy). Champion International also testified in support of the bill, echoing Sen. Healy’s statements and specifically citing the facts of Cordier as an example of the problem. Hearing on SB 322 Before the S. Judiciary Comm., 46th Leg., Reg. Sess. (Mont. 1979) (statement of Champion International Corporation).

 Plan 1 self-insured employers are instead subject to requirements for annual proof and approval of self-insurability from the Montana Department of Labor and Industry and MIGA, joint and several liability, excess liability coverage, and a supplemental security deposit or bonding. See § 39-71-2101 through -2109, MCA.

 In 2015, the Legislature repealed the State’s Fund’s prior Montana Insurance Code exemption, expressly subjected it to general Insurance Code regulation as an “authorized insurer,” as defined by § 33-1-201(2), (5)(a), (6), MCA, and continued to expressly exempt it from the MIGA Act. See §§ 33-1-102(5), -115(1), (3)(a)(iv), MCA (Ch. 320, §§ 1 and 5, L. 2015 (SB 123)).